## Gard Appeal.

Argued March 28, 1947. Before MAXEY, C. J. DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Thomas E. Whitten*, with him *Jason Richardson*, for appellants.

*W. I. King*, with him *Carl E. Glock*, for appellee.

*Randolph W. Childs* and *Adams, Childs, McKaig & Lukens*, for Children's Aid Society of Pennsylvania, filed a brief under Rule 61.

OPINION BY MR. CHIEF JUSTICE MAXEY, April 14, 1947:

This is a proceeding for the possession of Betty Jean Tuttle, who was born January 19, 1944. The mother was unable to care for the child and placed her in the Roselia Foundling Asylum. In May of 1945 the mother asked the Children's Aid Society to supervise the boarding of the child in a foster home. The respondents W. Russell Gard and Helen Gard, his wife, are a childless couple living in Crescent Hills, Penn Township, Allegheny County, Pennsylvania, and the Children's Aid Society placed the child with them on June 28, 1945. This child was delivered to the Children's Aid Society by the Roselia Foundling Asylum. On or about August 1, 1945, the mother informed the Society that she had an opportunity to marry but that the child was an obstacle to such and that she desired the Society to arrange for the adoption of the child. The minor child continued to reside with the Gard family.

When she was placed in their possession they signed an agreement with the Children's Aid Society which reads as follows: "1. We, W. RUSSELL GARD and HELEN R. GARD, do apply to CHILDREN'S AID SOCIETY OF ALLEGHENY COUNTY for a child

or children for boarding home care in our home. We agree to accept any child so placed with us subject to the conditions laid down by the Society which we recognize has custody. We agree to hold any such child subject at all times to the call of the Society. 2. We shall never assert any rights, custody or control adverse to that of the Society. It shall have the right to visit, to inspect and supervise measures taken by us to promote the child's well-being, and to call for the return of or to remove said child from our custody at any time in its sole discretion provided only that we shall have been fully paid for board, clothing, medical care and such expenses as are on the Society's expense blank, accrued after the last preceding monthly settlement."

On June 25, 1946, the Society notified Mr. and Mrs. Gard of its intention to take Betty Jean Tuttle from their possession. The former, having become attached to the child by intimate association with it, informed the Society that they desired to adopt the child as their own and alleged they were fit and proper persons to do so and were financially and physically able to perform their duties as parents. They refused to deliver the child to the agents of the Society.

On June 28, 1946, the Society secured the appointment of itself as guardian of this minor child and then as such it filed its petition in the Orphans' Court of Allegheny County for possession of the child. A citation was issued. Mr. and Mrs. Gard filed their answer and on July 24, 1946, the matter came on for hearing before the Orphans' Court, with Judge BOYLE presiding. After the hearing, the trial judge made an order directing Mr. and Mrs. Gard to deliver the minor child to the Society. Exceptions were filed to this decree. After a hearing by the Court in banc, the exceptions were dismissed and the action of the trial judge was affirmed. To this decree, the respondents on October 14, 1946, appealed to the Supreme Court and on October 15, 1946, the court made the appeal a supersedeas and a bond required in the order was filed.

The Orphans' Court has no jurisdiction in a matter of this kind. In proceedings for the *adoption* of a child the Orphans' Court, under the amended Act of July 2, 1941, P. L. 229, section 1, 1 PS 1 (Cumulative Annual Pocket Part), has exclusive jurisdiction (except in cities of the first class where the Municipal Court has exclusive jurisdiction). See *In Re Adoption of August Aloysius Schwab*, 355 Pa. 534, 541; and also *Ballard v. Ward*, 89 Pa. 358; and *Carroll's Estate*, 219 Pa. 440, 68 A. 1038. This case is a proceeding for the *possession* of a child, not for its adoption, and, therefore, the party seeking possession must proceed by writ of habeas corpus. The Orphans' Court has no jurisdiction in habeas corpus proceedings. The Habeas Corpus Act of February 18, 1785, 2 Sm. L. 275, section 13, 12 PS 1888, provides that, "the provisions hereinbefore made [i. e. in section 1 and other sections of the Act of 1785] shall . . . extend to all cases where any person . . . shall be confined or restrained of his or her liberty, under any color or pretense whatsoever; and that upon oath or affirmation made by such person, so confined or restrained, or by any other in his or her behalf . . . a habeas corpus, directed to the person or persons so confining or restraining the party as aforesaid, shall be awarded and granted . . ." The judges of the Supreme Court and of the Court of Common Pleas are authorized to issue writs of habeas corpus. See Act of 1785, supra; also, *Commonwealth v. Addicks*, 2 S. & R. 174; and *Commonwealth v. Smith*, 1 Brewst. 547.*

---

* The Act of April 4, 1837, P. L. 377, section 2, 17 PS 502, confers upon the "court of general quarter sessions of the peace of the county of Philadelphia, or either of the judges thereof, . . . full power and authority to allow and issue writs of habeas corpus as they now have as judges of the court of common pleas . . ." This Act is limited to Philadelphia county.

The Act of July 11, 1917, P. L. 817, section 1, 12 PS 1874, which refers to appeals by "any party aggrieved by any order, decree, or judgment in any habeas corpus proceeding, involving the custody of children in any of the courts of this Commonwealth" gives the right of appeal therefrom to the Superior Court.

Our decision in the instant case is that the Orphans' Court of Allegheny County had no jurisdiction to decide the question of the custody of the child named in the petition on which the court acted. This decision does not affect the question of the lawful custody of the child, Betty Jean Tuttle; which question will have to be determined in appropriate proceedings.

The decree of the Orphans' Court of Allegheny is reversed and vacated; the respective parties will pay their own costs.