Rose Child Dependency Case.
Grana and Leonard Appeals.

Argued April 22, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Bresci R. P. Leonard,* for appellants.

*Rabe F. Marsh, Jr.,* Assistant District Attorney, with him *Edward G. Bauer,* District Attorney, and *Joseph M. Laughron,* Assistant District Attorney, for appellee.

PER CURIAM, July 17, 1947:

The Juvenile Court of Quarter Sessions of Westmoreland County made certain orders and decrees in regard to Maria Rose, alleged to be a dependent child, with a final order directing the officers to take the child from her home in Allegheny County and deliver her to the officers of the court below. There was also an order adjudicating in contempt the attorney for the persons having custody of the child in Allegheny County.

In this opinion we will chronologically develop the facts as and when they appeared on the record below.

The first step was taken on February 28, 1946, when the juvenile court filed an order that "it having been called to the attention of the Court by the Juvenile Probation Officer that the above named child *is* dependent,

*on due consideration it is . . . adjudged and decreed*
that she . . . be and she is *hereby adjudged* to be a ward
of the Juvenile Court of Westmoreland County, and is
placed temporarily in the custody of the Catholic Wel-
fare Association of Westmoreland County. . . ." (Em-
phasis supplied). The Juvenile Court Law of 1933 con-
tains no provision for an adjudication that a child is a
"ward of the court." The court apparently meant that
she was adjudged a dependent child. This order of court
was void. The court had no jurisdiction of the subject
matter, of the alleged dependent child, nor of any of
the parties. The Juvenile Court Law (11 PS 243 et seq.)
followed similar legislation for the protection of children
and gives exclusive jurisdiction of proceedings affecting
delinquent, neglected and dependent children to that
court. But it provides that §4 [1] that the powers of the
court are to be exercised upon the petition of any citizen
(or commitment by a magistrate). Until a petition was
filed alleging that the child was neglected or dependent,
the court had no power to act. Furthermore, the court
could not make an *adjudication* on the petition until a
full hearing had been had, and there could be no "due
consideration" (in the language of the court) when
there was no hearing. It is also true that it is an abuse

[1] "The powers of the court may be exercised—

"1. Upon the petition of any citizen, resident of the county, set-
ting forth that (a) a child, giving his or her name, age, and resi-
dence, is neglected, dependent or delinquent, and is in need of care,
guidance and control, (b) the names and residence of the parents, if
any, or of his or her legal guardian if there be one, (c) the name
and residence of the person or persons having control of the child,
and (d) the name and residence of the nearest relative if no parent
or guardian can be found.

"2. Upon commitment, by a magistrate, alderman or justice of
the peace, of a child arrested for any indictable offense, other than
murder, or for the violation of any other laws of this Common-
wealth or the ordinance of any city, borough or township.

"3. There shall be no preliminary hearings in any cases affect-
ing dependent, delinquent or neglected children under the age of
sixteen years." 1933, June 2, P. L. 1433, §4.

of discretion for a court to go into such hearing and adjudication without notice to the persons having custody of the child, and without an opportunity for them to be heard, unless imperious reasons exist therefor. No such reasons existed here.

The void order of February 28, 1946, was followed by an amplified order of March 26, 1946, which recited that the interest of the child would be best served by placing her in the hands of her mother, and that the child was in need of medical treatment and should be near a hospital, and awarding custody of the child to the assistant probation officer of the court. This order was also void for the same reasons, and also for the additional reason that the power of the juvenile court is not to adjudicate what is for the best interests of a child, but to adjudicate whether or not the child is neglected and dependent, and *if* so, to make orders in relief of the child.

On April 10 the attorney for Marco Grana and Bertha Grana, who had the custody of said child and lived in Allegheny County, applied for a "rehearing". Since the original and supplemental orders were void, and there never had been a hearing, such an application was superfluous, but was made because the custodians of the child believed (correctly) that the Juvenile Court of Westmoreland County had no jurisdiction. On April 11 the court made another order directing the Granas *and their attorney* to produce the child in open court on April 16 for a "rehearing". This order was void for the reasons already stated, and because the court had no power to direct the *attorney* for parties having custody to produce the child. In view of the facts developed at the hearing, and presumably known to the court at the date of the order, the court should not have directed the production of the child in court. There was no suspicion that the child was being mistreated, and the appearance of this infant nine months old in court could not aid in the determination of whether she was neglected or depend-

ent; and the trial judge stated at the "rehearing" (and reaffirmed in his written opinion) : "[There is] no dispute about the Grana home not being a proper home. . . . It is stipulated and agreed that the Grana home is a fit and proper home for the child." The only purpose of such an order was to get the child within Westmoreland County.

The "rehearing" was held April 16. The court, evidently advised by its own officers, "stipulated" that the child was in a good home. The unmarried mother of the child admitted that she had gone to the Roselia institution in Allegheny County to give birth to this child, and that she had signed a written paper, giving that institution the power to place the child for adoption. She admitted that the child had been placed with the Granas by the institution. The Granas therefore did not tortiously obtain custody. Even if a proper petition had been filed, the court at the conclusion of the testimony should have dismissed the proceeding. The child was admittedly not dependent and not neglected. She had a good home and was properly cared for. There was no evidence that she needed medical or hospital care.

The Granas, through their attorney, sought to convince the court that the child was not dependent; that since her custody by the Granas was by the written consent of the mother, the Juvenile Court of Westmoreland County had no jurisdiction, the child never having been in Westmoreland County, and that the purpose of the proceedings was merely to obtain custody. On all these scores the appellant was correct, for the mother herself stated in open court that her purpose was to "get back her child", and there was not the slightest evidence that she was neglected or dependent. Even though the mother claimed that her written consent to the Roselia institution to place the child for adoption was procured by what the judge called "a mild coercion", this still did not make the child dependent.

The hearing on April 11 was the first taking of any testimony, although the court had made an *adjudication* months before. On June 3 the court filed another order. It recited that a petition concerning the child had been presented to the court on May 1, 1946. No such petition was on that date in the files of the clerk of court. But such a petition, sworn to on May 1 by the mother, was filed on June 3. The order recited the prior "preliminary orders", and that the welfare of the child would be best served by granting the prayer of the petition, and therefore adjudged the child to be dependent, effective as of February 27, the date of the original order. No hearing had ever been had on this petition. The only testimony was taken on April 16, and that testimony clearly demanded the dismissal of the proceedings. The prayer of the petition was that the court "formally take jurisdiction over her said child, Maria Rose, *as* a dependent child in need of care, . . . and to . . . find a suitable foster home for the said child until . . . she [the mother] is able to care for her. . . ." (Emphasis supplied). No fact is averred in the nine paragraphs of the petition that the child *was* neglected or dependent. Its purpose was to secure custody. This order of the court cannot be sustained. When made the court had indubitable evidence, and in fact had stated, that the child was in a good home, and she was neither neglected nor dependent.

On June 4 the court filed another order refusing to vacate the prior orders; and on June 5 ordered the state police to take the child by force from her home in Allegheny County and bring her to Westmoreland County. We are compelled to state that this order was an abuse of discretion under the evidence; and indeed under the rulings of the court itself, for the child was admittedly not dependent. It was also abuse of discretion for the court to make such an order directing the child to be forcibly taken from her home, unless clear and urgent reasons require the child to be rescued from present or imminent distress.

As to the contempt proceedings the first step was an order filed on June 18 and dated June 12 which recited that the attorney for the foster parents, by intimidation and force, prevented the court's probation officers from taking the child; that he ignored the order of court directing him to produce her, and had written an improper or impertinent letter to the president judge impugning the motives of the trial judge; and then adjudicating the attorney in contempt. This order and adjudication was likewise void, not only for all of the reasons heretofore recited, but because the court had no power to direct the attorney to produce the child unless the attorney had custody. As far as any advice or acts of the attorney having prevented the officers from taking the child from the Granas, such contempt was not committed in the presence of the court, and therefore no adjudication of contempt could be made without notice and hearing. We may also state that the attorney was quite right in doing everything in his power, short of the use of force, to dissuade the officers from taking the child. Although there was neither a petition, rule to show cause, notice nor evidence in the contempt matter, we have examined the letter written by the attorney to the president judge. As far as we can see there is nothing in the letter which is contemptuous, or which impugns the motives of the court. The letter stated what the mother-petitioner had told the attorney for the Granas. The repetition of this, if made out of proper motives, was not a contempt. On the whole subject matter, including the matter of motive, see *Commonwealth v. Sheasley*, 102 Pa. Superior Ct. 384.

We give full credit to the trial judge as to his sincerity of purpose and his desire to do right. The difficulty is that, however much the court believed it to be desirable, juvenile court proceedings, like adoption proceedings, are not a substitute for habeas corpus. This has often been decided (*Gard Appeal*, 356 Pa. 378, 52 A. 2d 313) and the question of custody was the only thing that was ever sought to be determined in these proceedings.

We must make one other observation. No new proceedings can be entertained by the court below on a petition that avers this child is neglected or dependent unless the present situation changes so that the child is *actually* neglected. There is nothing in the proposition that a child is neglected if dependent on private charity, as alleged by the appellee. If the child is properly supported by her foster parents, the fact that possibly they cannot be compelled to support her in the future does not make the child dependent now. Any child may at some future time become dependent, but adjudication cannot be made until dependency actually occurs. The county seat of Westmoreland County is some thirty miles from the city of Pittsburgh, where sits a special and independent juvenile court of Allegheny County. Certainly that court will, if requested, have its officers investigate whether the child is properly cared for and nurtured. No more orders should be issued directing that this child be forcibly taken by the officers to Westmoreland County. It is both unnecessary and improper. If the child is in fact neglected and dependent (and nobody pretends that she is), complaint should be made to the Juvenile Court of Allegheny County, either by the mother or by the officers of the Juvenile Court of Westmoreland County. The question of custody must be adjudicated in Allegheny County.

The proceedings to No. 7 February Term, 1946, captioned in the Juvenile Court of Westmoreland County, relating to the custody of Maria Rose, alleged to be a dependent child, although initiated by the lower court with no doubt the best intentions, were pursued in a manner that cannot be sanctioned. The whole proceeding was nonjudicial, void in form and substance, and is ordered to be stricken from the record; costs to be paid by the county of Westmoreland.

As to the proceeding to No. 96 April Term, 1947, or the adjudication of contempt, since the alleged contempt is based upon violation of various orders of the court

which were void in form and substance, and since the alleged contempt was not committed in the presence of the court, and no notice of hearing was ever given, the adjudication of June 12, 1946, by the Court of Quarter Sessions or the Juvenile Court of Westmoreland County, is also stricken from the record; costs to be paid by the county of Westmoreland.