## Hoke Estate

*Harold C. Caplan,* for exceptant.

*Robert K. Young,* contra.

GEARHART, P. J., May 25, 1961.—James D. Hoke died on March 16, 1960. His executor, James A. Hoke, has filed his first and final account which is before us for audit.

The only matter submitted to the court for adjudication was the question of a claim filed by the Commonwealth of Pennsylvania for the maintenance of decedent at the Allentown State Hospital from April 16, 1959, to November 30, 1959, in the amount of $1,078.50. Accountant has refused payment of the same, alleging that the court of quarter sessions has

disposed of the matter by placing the costs on the Commonwealth.

The facts are not in dispute. On February 6, 1959, James D. Hoke, decedent, was arrested on the following charges: (1) Attempt with intent to kill;

(2) carrying a concealed deadly weapon; carrying a firearm without a license;

(3) playfully pointing a deadly weapon; wantonly pointing a deadly weapon.

On April 7, 1959, the grand jury returned a true bill to no. 46, April sessions, 1959 (attempt to kill). On April 9, 1959, defendant's attorney moved for a continuance of the case, and on April 14, 1959, decedent's counsel filed a petition with the court for the commitment of the prisoner to the Allentown State Hospital because of mental illness. Pursuant to that petition, the district attorney on the same day presented a petition for the commitment of defendant to the State Hospital. The court then appointed a commission which found that defendant was mentally ill and not of a criminal tendency.

The court, on April 15, 1959, entered an order for commitment finding that defendant, James D. Hoke, was mentally ill and that he was not of a criminal tendency. The court further directed that the said James D. Hoke "Be committed to the Allentown State Hospital to be there detained and treated as a mentally ill person at the expense of the Commonwealth of Pennsylvania until further Order of the Court; . . . and it is further ordered that the County of Lehigh pay the costs of this proceeding including the expense of removing the said prisoner to the Hospital."

It is because of this order by the Court of Quarter Sessions that the executor insists that decedent's estate is not liable to the Commonwealth. The Commonwealth on the other hand argues that the Act of June 1, 1915, P. L. 661, sec. 1, 71 PS §1781, is applicable. That

under this section of the act the estate of decedent is liable. The section provides: "Whenever any person is maintained as an inmate of any hospital, home, sanatorium, or other institution of the Commonwealth, in whole or in part at the expense of the Commonwealth, the property or estate of such person shall be liable for such maintenance, to be paid or recovered as hereinafter provided." However, the Mental Health Act of June 12, 1951, P. L. 533, sec. 1001, 50 PS §1621, provides that the provisions of the 1915 State Government Act are repealed insofar as they are inconsistent with the Mental Health Act of 1951. In this case, the Mental Health Act of 1951 is controlling of the issue raised.

Article 7, sec. 701 of the Mental Health Act 50 PS §1361, provides for costs in general for the maintenance of a patient in a State Institution. It provides:

"(A) Except as otherwise specifically provided in this act, liability for all costs of care of any patient in a State institution is hereby imposed, in the following order, against—

"(1) The patient's real and personal property;

"(2) The persons liable for the patient's support;

"(3) The Commonwealth or, in the case of an inebriate, the county or institution district in which he resides."

This section sets up the order of liability for the costs of the care of inmates at State institutions "except as otherwise specifically provided in this act."

It is clear that the legislature did contemplate some other provisions for the liability of costs of the care of patients in a State institution, as shall hereafter appear.

In examining the Mental Health Act of 1951, there are other specific provisions which deal with the problem now before us. Thus, under article 7, sec. 702, 50 PS §1362, it is provided that if a patient is serving a

sentence after having been convicted of a crime, the cost of his care shall be borne: (1) By the county in which that patient was convicted; (2) by the patient's own property; (3.) by the persons who normally would be liable for his support.

The facts in this case indicate that decedent was a patient who was convicted of several crimes and who was an inmate prior to the expiration of the term of his sentence for these crimes. The court of quarter sessions specifically included the period of detention in the State hospital as part of decedent's 9 to 22 months sentence.

Examining article 7, sec. 703, 50 PS §1363, we find that it is under this section that Judge Henninger of the Quarter Sessions Court of Lehigh County entered the order of April 15, 1959, wherein he directed that decedent be "detained and treated as a mentally ill person at the expense of the Commonwealth of Pennsylvania until further Order of the Court." This section provides:

"(a) When any patient is committed by order of court, the committing court, at the time of commitment, shall make an order for the payment of the costs of care of the patient.

"(b) When any patient is or has been admitted to any institution, any court of the county in which the patient resided prior to his admission shall have power to make an order for the payment of the costs of care of the patient.

"(c) Before making any order, the court shall take into consideration the ability to pay of the patient or the persons liable for his support.

"(d) Any court having the power or duty to make an order shall have the power or duty to modify or revise the order from time to time, on cause shown."

Under this section, the court of quarter sessions is given specific statutory power to say who shall pay the

costs of the care of the patient. As already pointed out in article 7, sec. 701, supra, the Commonwealth, in certain cases, must bear the costs. It must be assumed that the court, in making its order, took into consideration the ability to pay of the patient and the persons liable for his support. In any event, it is not for this court to pass judgment on the acts of the court of quarter sessions. We are bound to respect that decree which is plain and clear, i.e., the Commonwealth shall pay the cost of maintaining decedent while in the State hospital. See 10 P. L. Encyc. Courts, §161; Ahl v. Rhoads, 84 Pa. 319, 327; Hohein's Estate, 265 Pa. 14, 19.

It is to be observed that the statute not only placed the power to make the order in the court of quarter sessions, but also provided in section 703 (d) that the court shall have the power or duty to modify or revise the order from time to time on cause shown. In addition to section 703, which authorizes the court to revise or modify its decree, we find in section 705 the procedure to be followed by the Department of Revenue to effect such revision or modification. In the case where the patient was committed by order of court, as it was in this case, the application must be made to the court.

Summing up the matter, we have here a situation where the Court of Quarter Sessions of Lehigh County, under statutory authority, placed the costs on the Commonwealth of Pennsylvania. The Commonwealth was aware of this order and yet did nothing. The order was never altered by the court nor was an appeal taken to the appellate courts. The order is as effective today at it was when entered by Judge Henninger on April 15, 1959.

It is argued by the Commonwealth that as a matter of public policy, as well as a matter of plain honesty this decedent's estate should honor the claim of the Commonwealth. With this philosophy, we can agree.

However, we have here an order of court lawfully entered under statutory authority placing the costs on the Commonwealth. We have no discretion in the matter. Our duty is plain and, that is, to give effect to the lawful order of the Court of Quarter Sessions of Lehigh County. See 10 P. L. Encyc. Courts, §171; First National Bank and Trust Co. v. Jaffe, 114 Pa. Superior Ct. 315; Caveny v. Curtis, 257 Pa. 575, 582, 583; Gard Appeal, 356 Pa. 378, 382; Estate of John J. Goshen, Deceased (No. 2), 41 Lanc. 673.

Accordingly, the claim of the Commonwealth is disallowed.

*Opinion Sur Exceptions*

GEARHART, P. J., October 26, 1961.—Exceptions have been filed to the court's decree of May 25, 1961, denying the Commonwealth's claim.

The exceptions are four in number and, in substance, allege that the court erred in ruling that the Mental Health Act of 1951 controlled the issues raised in this case. Also, that the decree of the Court of Quarter Sessions placing the costs on the Commonwealth was not binding on the Commonwealth, so far as it relates to the right of the Commonwealth to claim reimbursement against the estate of decedent.

The same argument is now advanced as was originally made. We have reviewed our adjudication and again considered the argument of the Commonwealth. We are not persuaded that our findings of fact and conclusion of law was erroneous.

While the estate of decedent in this case escapes payment for the maintenance of decedent in a State institution, it is not because of anything that decedent did or did not do. It is because of a decree entered by the Court of Quarter Sessions of this county, pursuant to statutory enactment. See: 50 PS §§1361, 1363. The statutory enactment is binding on the Commonwealth

no less than on individuals. In addition to all else, there is the consideration of the imperative of judicial integrity. If the law were otherwise a decree of court would amount to little more than a snare and delusion.

The exceptions are dismissed and the adjudication of May 25, 1961 is made absolute.