J-A32001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: E.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: YORK COUNTY OFFICE | : | |
| OF CHILDREN YOUTH & FAMILIES | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 966 MDA 2017 |

Appeal from the Order Entered May 19, 2017
In the Court of Common Pleas of York County
Juvenile Division at No(s):  CP-67-DP-0000218-2015

BEFORE:   OTT, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 08, 2018**

York County Office of Children Youth and Families (CYF) appeals from

the order entered May 19, 2017, in the Court of Common Pleas of York County,

that, *inter alia*, terminated the dependency adjudication of E.C., a minor,[1]

returned legal and physical custody of E.C. to his father, T.C., Sr. (Father),

vacated *ab initio* the dependency adjudication, directed expungement of the

adjudication, and vacated all prior orders awarding custody or educational

rights to anyone other than Father.  CYF contends the trial court erred and

abused its discretion in (1) vacating *ab initio* the adjudication of dependency

of E.C., directing the dependency order and any findings of dependency be

expunged, and vacating all prior orders awarding custody or educational rights

_____

* Retired Senior Judge assigned to the Superior Court.

[1] E.C. turned 18 years of age while this appeal was pending in this Court.

to anyone other than Father, based upon its finding that E.C. was not credible in his allegations of abuse by his father, and (2) returning legal and physical custody of a dependent child, E.C., to his father, a resident of Virginia, in violation of the Interstate Compact for the Placement of Children (ICPC).[2] *See* CYF's Brief at 5. Based upon the following, we affirm in part, and reverse in part.

This dependency case was initiated after CYF received a referral on September 17, 2015, regarding E.C., due to allegations of physical abuse of E.C. by Father and drug and alcohol usage by Father.[3] On September 24, 2015, CYF filed an application for emergency protective custody. On September 25, 2015, the Honorable Andrea Marceca Strong granted CYF's application, transferring legal and physical custody of E.C., then 16 years of age, to CYF. *See* Order for Emergency Protective Custody, 9/25/2015. A shelter care hearing was held on September 28, 2015, attended by Father and E.C.'s mother, L.W. (Mother).[4] By order dated September 29, 2015, Judge Strong adopted the recommendation of the Master that E.C. remain in shelter care. On September 30, 2015, CYF filed a dependency petition, alleging E.C.

---

[2] *See* 62 P.S. § 761.

[3] *See* Application for Emergency Protective Custody, 9/24/2015, at 3 ¶1.

[4] Mother was initially identified as T.B., but the error was subsequently corrected to reflect her name as L.W. *See* N.T., 9/28/2015, at 29; Dependency Petition, 9/30/2015, at ¶7.

to be a dependent child, pursuant to 42 Pa.C.S. § 6302, due to lack of proper parental care and control, and also alleging physical abuse of E.C. by Father based upon the referral received by CYF.[5]

On November 16, 2015, a dependency hearing was held before Judge Strong, and Judge Strong adjudicated E.C., finding:

> The child is without proper [parental] care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals.

Order of Adjudication, 11/16/2015, at 1, *quoting* 42 Pa.C.S. § 6302, "Dependent Child"(1).[6] The trial court found that "[a]ll parties present are in agreement that the child is dependent based on lack of proper parental care or control,"[7] ordered legal and physical custody of E.C. remain with CYF, and directed E.C. be placed by CYF at United Methodist Home. *Id.* at 1. The court further ordered that "[t]he finding of abuse is deferred to a later date and may be pursued upon praecipe to schedule a hearing being filed …". *Id.* at 2.

---

[5] The dependency petition alleged Mother was residing in South Carolina. *See* Dependency Petition, 9/30/2015, at 4 ¶7.

[6] At the dependency hearing, the trial court incorporated into the record an October 6, 2015, comprehensive psychological evaluation completed by Dr. Hugh S. Smith, of Hugh S. Smith, Ph.D & Associates, P.C. Dr. Smith recommended that E.C.'s case continue to be managed through CYF and that an out of home placement would benefit E.C. *See* CYF Exhibit 1 at 11, and N.T., 11/16/2016, at 15.

[7] Mother was not present at the hearing. N.T., 11/15/2016, at 2. Mother indicated she was available by phone. *Id.*

In addition, Judge Strong specifically stated on the record that "we only make the [dependency] finding based on lack of proper parental care based on the parent/child conflict with [F]ather and the unavailability of [M]other." N.T., 11/16/2015, at 17. Before the close of the hearing, Judge Strong "remind[ed] [M]other of her right to be represented by counsel," and "remind[ed] all parties of their right to file an appeal of th[e] decision within 30 days." *Id.* at 18. No appeals were filed from the dependency adjudication.

Regular review hearings were held periodically throughout this case.[8] On February 29, 2016, CYF filed a motion for modification of placement, to move E.C. from group home placement at United Methodist Home to shelter care placement at York County Youth Development Center due to concerns regarding E.C.'s behavior. On March 1, 2016, CYF's motion was granted by the Honorable N. Christopher Menges, and an order was entered continuing E.C. in CYF's legal and physical custody for placement in shelter care. On March 2, 2016, at the permanency review/shelter care hearing, Judge Menges

_____

[8] *See* N.T., 1/14/2016 (status review hearing before Jeffrey T. Bizer, Esquire, Juvenile Master); N.T., 3/2/2016 (permanency review hearing before the Honorable N. Christopher Menges); N.T., 6/1/2016 (status review hearing before Judge Menges); N.T., 8/23/2016 (permanency review hearing before Juvenile Master Bitzer); N.T., 2/13/2017 (permanency review hearing before Judge Menges). The November 23, 2016 status review hearing before Judge Menges was cancelled.

Father was present at the hearings on January 14, 2016, March 2, 2016, and August 23, 2016; he was not present at the hearings on June 1, 2016 and February 13, 2017, nor did counsel appear on his behalf at those hearings.

ordered E.C. to remain in shelter care. Thereafter, CYF filed a motion for modification of placement when a group home space became available for E.C. at Concern Treatment Unit for Boys, effective June 17, 2016. The motion was granted by Judge Menges by order entered June 15, 2016.

A permanency review hearing was held on August 23, 2016. Relevant to this appeal, Father advised that the military would be relocating him to Fort Belvoir, Fairfax County, Virginia, on September 1, 2016. ***See*** N.T., 8/23/2016, at 11. ***See also id.*** at 8. At the hearing, the issue of the ICPC[9] was discussed as it related to E.C.'s visitation and possible reunification with Father who would be living outside Pennsylvania. ***Id.*** at 9-10.

On October 20, 2016, CYF filed a motion to schedule dispositional hearing to address E.C.'s out of state and unsupervised visitation with Father. A hearing was convened on October 27, 2016 on CYF's motion. On that date, Father's new counsel entered her appearance and filed, on behalf of Father, a motion to terminate dependency or in the alternative for a change of

_____

[9] Regarding the ICPC, we note:

> The ICPC is a statutory agreement among member states, the District of Columbia, and the U.S. Virgin Islands authorizing them to work together to ensure that children who are placed across state lines receive adequate protection and support services. The ICPC establishes procedures for the placement of children and assigns responsibility for agencies and individuals involved in placing children.

Pennsylvania Dependency Benchbook, at p. 14-9 (Rev. 2014).

placement to Father's home. Father's counsel requested a continuance, and the court granted this request. The disposition hearing was continued to be combined with an already scheduled status review hearing on November 23, 2016, before Judge Menges. *See* N.T., 10/27/2016, at 2. A subsequent continuance request was also granted, and the hearing rescheduled to January 12, 2017. Meanwhile, on December 12, 2016, CYF filed a Regulation 7 Form Order for Expedited Placement Decision Pursuant to the ICPC for purposes of initiating an Interstate Compact referral for Father in Virginia.

Testimony before Judge Menges began on January 12, 2017, but was not completed on that date and the hearing was continued for additional testimony. On January 17, 2017, CYF filed a motion/praecipe to schedule finding of abuse hearing, which was granted, and a hearing was scheduled for March 3, 2017, to be combined with the continued hearing on the pending motions.

On February 13, 2017, a permanency review hearing was held. The caseworker reported that the ICPC for Mother had been denied "because she was not cooperative," and that on January 23, 2017, Father "would be formally charged by the military on several accounts [sic] of abuse towards [E.C.] and other individuals." N.T., 2/13/2017, at 6. The Virginia ICPC referral for Father was expected to be put on hold as a result of the military charges against him. *See id.* at 13. Further evidentiary hearings occurred on March 3, 2017, and

May 4, 2017. On May 4, 2017, Judge Menges placed his order and findings of fact on the record.

Judge Menges adjudged E.C. to be not dependent and, *inter alia*, vacated the November 16, 2015, dependency adjudication *ab initio*, directed expungement of the dependency order and findings of dependency, and ordered E.C. returned to Father immediately. The trial judge also vacated any additional orders that grew out of the dependency adjudication that gave legal or physical custody, or educational rights or any other rights to anyone other than Father. In addition, the trial court denied CYF's request for a finding of abuse determination against Father. In Findings of Fact, the trial court found "{E.C.} to be not credible in his allegations that were made on or about September of 2015 relative to abuse by his father," and "that no abuse took place at all in the autumn of 2015 by father against {E.C.}" Order, 5/19/2017, at 4, 6-7. The trial court's order with findings of fact was entered on May 19, 2017. This timely appeal followed.[10]

At the outset, we state our standard of review:

> The standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. We review for abuse of discretion.

---

[10] CYF filed a Rule 1925(b) statement with its notice of appeal, in compliance with Pa.R.A.P. 1925(a)(2)(i).

In addition, we have observed:

> In dependency proceedings our scope of review is broad. . . . Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate.

*In the Interest of J.M.*, 166 A.3d 408, 416 (Pa. Super. 2017) (citations omitted). With regard to questions of law, our standard of review is *de novo.* *See id.*

CYF first argues the trial court committed an error of law and abused its discretion when it vacated *ab initio*[11] the adjudication of dependency of E.C., directed that the dependency order and any findings of dependency be expunged, and vacated all prior orders awarding custody or educational rights to anyone other than Father, based upon its finding that E.C. was not credible in his allegations of abuse by his father. *See* CYF's Brief at 18.

CYF acknowledges the court's purview to terminate an adjudication of dependency, court supervision and/or jurisdiction, and services through a county agency. *See* CYF's Brief at 21, *citing* Pa.R.J.C.P. 1631 ("Termination of Court Supervision"). However, CYF maintains the trial court's decision "to wipe the slate clean, is clearly erroneous." CYF's Brief, *id.* at 21. In this

---

[11] "The term void *ab initio* means an action that is void from its inception." *Commonwealth v. Dennis*, 695 A.2d 409, 410 n.4 (Pa. 1997), *citing* Black's Law Dictionary 6 (6th ed. 1990).

regard, CYF asserts, "This appears to be a question of first impression in the Pennsylvania courts: whether or not the customarily contract-related doctrine of 'void *ab initio'* to challenge procedural validity applies to court orders in the child welfare context." *Id.* at 21.

Our research reveals that the doctrine of void *ab initio* has been applied in dependency cases. In ***In re Rose***, 54 A.2d 297 (Pa. Super. 1947), this Court held the trial court's dependency adjudication was void *ab initio* because the court had no jurisdiction of the subject matter of the alleged dependent child where no dependency petition had ever been filed. The ***Rose*** Court opined: "Until a petition was filed alleging that the child was neglected or dependent, the court had no power to act." *Id.* at 298. In addition, in ***Rose***, no hearing was conducted by the court prior to the adjudication, and no notice was given to the persons having custody of the child. The ***Rose*** Court found all subsequent orders to be void and concluded:

> The proceedings … relating to the custody of Maria Rose, alleged to be a dependent child, although initiated by the lower court with no doubt the best intentions, were pursued in a manner that cannot be sanctioned. The whole proceeding was nonjudicial, void in form and substance, and is ordered to be stricken from the record; costs to be paid by the county of Westmoreland.

*Id.* at 301. ***See also Dauphin Cty. Soc. Servs. v. R.J.L.***, 821 A.2d 632, 635 (Pa. Super. 2003) (affirming trial court's order that voided orders entered against parents for support of dependent children after Superior Court ruled trial court had no jurisdiction to make *sua sponte* dependency finding). Therefore, we turn to consider the facts of the present case.

Here, pursuant to a dependency petition and having conducted a full hearing, the trial court adjudicated E.C. dependent on November 16, 2015, on the sole grounds that E.C. lacked proper parental care and control. These grounds were agreed to by the parties present at the hearing. CYF had asked that a finding of abuse be deferred and that the adjudication proceed,[12] and the trial court specified in the adjudication that CYF reserved its right to later pursue a finding of abuse. Thereafter, no party appealed the dependency order. Nearly one year later, when Father filed his October 27, 2016 motion to terminate the dependency adjudication, he sought only to terminate the dependency adjudication and to have custody of E.C. returned to him. Father did not request the court to vacate the dependency adjudication or to expunge the adjudication.[13] A hearing on Father's motion was held before Judge Menges, the successor judge in this case, who granted Father's motion and, as well, denied CYF's revived request for a finding of abuse.

Based on these facts, we conclude the portion of Judge Menges' order vacating E.C.'s dependency order *ab initio* cannot stand. In the present case, unlike **In re Rose, supra**, the trial court clearly had jurisdiction to make the

---

[12] **See** N.T., 11/16/2015, at 2-3, 16-17.

[13] The Pennsylvania Rules of Juvenile Court Procedure provide that, in delinquency cases, a party may file a motion with the court or the court may, *sua sponte*, commence expungement proceedings. **See** Pa.R.J.C.P. 170. The Rules contain no similar provision for expungement in dependency cases.

- 10 -

dependency adjudication based upon the dependency petition filed by CYF. Furthermore, the Pennsylvania Supreme Court has instructed that judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions, except

> in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed.

*Commonwealth v. Starr*, 664 A.2d 1326, 1332 (Pa. 1995). Here, no "exceptional circumstances" exist that justify departure from the coordinate jurisdiction rule. In this regard, it bears emphasis that, while Judge Menges found that E.C. was not credible regarding his claims of abuse by Father in the autumn of 2015, the issue of child abuse was **not** the basis of the November 16, 2015 dependency adjudication. Therefore, on this record, we agree with CYF that Judge Menges erred in ordering *sua sponte* that the dependency adjudication of E.C. was "to be considered as though it was never made." Order, 5/19/2017, at 2.

Accordingly, we reverse the portion of the May 19, 2017 order vacating *ab initio* the adjudication of dependency of E.C., directing the dependency order and any findings of dependency be expunged, and vacating all prior orders awarding custody or educational rights to anyone other than Father.

In the second issue, CYF contends the trial court committed an error of law and abused its discretion in returning legal and physical custody of a

dependent child, E.C., to his father, a resident of Virginia, in violation of the ICPC, 62 P.S. § 761.[14]

By way of background, the ICPC "governs the transfer and continued supervision of children who are moving between states for the purpose of adoption, foster care, or institutional placement." Pennsylvania Dependency Benchbook, § 3.4.2 at p. 3-4 (Rev. 2014).

CYF relies on 55 Pa. Code § 3130.41(2)(i), which states, "Under the provisions of the Interstate Compact on the Placement of Children, the county shall [a]pply for and receive approval from the receiving state prior to sending a child to a placement in another state." **See** CYF Brief, at 30 (emphasis added) CYF asserts "[t]he practice of the Commonwealth of Pennsylvania is to apply ICPC to placement with non[-]custodial out-of-state biological parents." **Id.** at 30 (citation omitted). CYF contends the trial court "lost sight of the best interests of [E.C.], particularly in light of the knowledge that there were military charges actually pending against Father, and that he was residing in Virginia and that a referral for ICPC approval had been made by

---

[14] As noted in Footnote 1, after this appeal was filed, E.C. reached the age of 18. Therefore, CYF's contention that the trial court violated the ICPC in returning E.C. to Father, a resident of Virginia, appears to be moot since the juvenile court's jurisdiction normally ends when the child reaches 18 years of age, unless the child requests the court to retain jurisdiction, and the court determines the child remains under the jurisdiction of the court. **See** 42 Pa.C.S. § 6302, "Child"(1), (3). **See also** 42 Pa.C.S. § 6351(f)(8.1). Accordingly, at this juncture, the trial court would not have jurisdiction of E.C.

CYF but put on hold by the Virginia ICPC office due to those criminal charges."

*Id.* at 30-31. We find, however, that the ICPC does not apply here.

Relevant to our review, Article III(a) of the ICPC provides: "No sending agency shall send, bring or cause to be sent or brought into any other party state, any child ***for placement in foster care or as a preliminary to a possible adoption*** unless the sending agency shall comply with each and every requirement set forth in this article." 62 P.S. § 761 (emphasis added).

Article II(d) of the ICPC defines "placement" as

the arrangement for the care of a child in a family, free or boarding home, or in a child caring agency or institution but does not include any institution caring for the mentally ill, mentally defective or epileptic or any institution primarily educational in character, and any hospital or other medical facility.

*Id.* Furthermore, Article V(a) states, in part:

The sending agency shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have if the child had remained in the sending agency's state until the child is adopted, reaches majority, becomes self-supporting, or is discharged with the concurrence of appropriate authority in the receiving state. … The sending agency shall continue to have financial responsibility for support and maintenance of the child during the period of the placement.

*Id.*

Here, the trial court concluded that "it's in [E.C.'s] best interest for him to [be] returned to the father," and that "there has not been any evidence

- 13 -

that there will be a safety concern for [E.C.] to return to his Father."[15] Therefore, the trial court terminated the dependency adjudication and ordered legal and physical custody of E.C. returned to Father, a resident of Virginia, immediately. Under these circumstances, we find trial court's order did not violate the ICPC since, when the trial court terminated the dependency adjudication and returned E.C. to Father's custody, the court ended its jurisdiction and supervision of E.C. and, therefore, Father was **not** a "placement" under the ICPC.

Accordingly, we reverse the portion of the May 19, 2017 order vacating *ab initio* the adjudication of dependency of E.C., directing the dependency order and any findings of dependency be expunged, and vacating all prior orders awarding custody or educational rights to anyone other than Father. Otherwise, we affirm.

Order affirmed in part, reversed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/08/2018

---

[15] Order, 5/19/2017, at 7.