418 A.2d 729

COMMONWEALTH of Pennsylvania ex rel. Thomas
ZAUBI and Kirstine Inez Zaubi

v.

Thomas Anthony ZAUBI, Thomas Zaubi and Frances Zaubi.

Appeal of Marianne HOJME, mother and next friend of
Thomas Zaubi and Kirstine Inez Zaubi.

Superior Court of Pennsylvania.

Argued April 11, 1979.

Filed Feb. 27, 1980.

Ewing B. Pollock, Waynesburg, for appellants.

Debbie O'Dell, Washington, for appellees.

Before VAN der VOORT, SPAETH and WATKINS, JJ.

VAN der VOORT, Judge:

This is an appeal by the mother of two small children from a lower court Order granting custody of the children to their father, the ex husband of appellant.

Appellant, Marianne Hoejmi, is a native of Denmark. She met Thomas Zaubi Sr., a native of Nemacolin, Pennsylvania, while the latter was serving with the U. S. Air Force in Europe. The couple were married on May 9, 1968. Following Thomas Sr.'s discharge they took up residence first in Denver, Colorado, and then Canonsburg, Pennsylvania, where their first child, Thomas Jr. was born July 29, 1970. Two months after his birth, the Zaubis took their son and moved to Copenhagen, Denmark, where Thomas Sr. found employment with IBM and Marianne with a hospital as a nurse. A second child, daughter Kirstine Inez, was born in Copenhagen on November 2, 1973.

In December 1974, the Zaubis returned to Nemacolin, Pennsylvania, to spend the holidays, planning to return to Denmark in January 1975. On December 29, 1974, Thomas Sr. told his wife that he would not return to Denmark and would not permit the children to return either; but that Mrs. Zaubi could stay with the family or return to Denmark as she pleased. Mr. Zaubi had not given his employer, IBM, notice of his intentions and was unemployed until March 1975 when he was again hired by IBM, this time to work in Cleveland, Ohio. Meantime, Mrs. Zaubi traveled to Denmark to close their apartment and then returned to Nemacolin with the family clothes and the children's toys.

In April 1975, approximately one month after the family moved to Cleveland, appellant took her children, without the consent of her husband, back with her to Copenhagen, where she took up temporary residence with her parents. On April 8, 1975, appellant secured an Order from a Danish court giving her temporary custody of her children. Appellant subsequently moved into an apartment and regained her previous position as nurse.

Soon after Thomas Sr. returned to Copenhagen, again as an employee of IBM. He brought suit in the Danish courts to get custody of his children. Mr. Zaubi was represented by counsel and informed the court that his knowledge of spoken Danish was sufficient that the services of an interpreter would not be required. On November 26, 1975, after

several hearings, custody was granted in favor of appellant with limited visitation rights to Mr. Zaubi. Visitation was initially restricted to the appellant's apartment for fear that if left alone with the children Mr. Zaubi would take them outside Denmark.

Thomas Sr. filed an appeal with the High Court of Denmark, the final appellate court, and a hearing was conducted. On April 13, 1976 the Court entered an order affirming the lower court.

On April 6, 1977, appellant secured the naturalization of both children. On June 15, 1977, Thomas Sr. also became a naturalized Danish citizen. On June 16, 1977, appellant received a final divorce decree from Thomas Zaubi Sr. At this time Mr. Zaubi was able to again appeal his case for custody of the children to the High Court of Denmark and another hearing was scheduled for November 17, 1977. On August 30, 1977, while the children were in his care during a visitation period, and while his custody appeal was pending, Mr. Zaubi fled with the children back to the United States. As a result of this act Mr. Zaubi has been charged with kidnapping by the Danish authorities and a warrant for his arrest awaits him should he attempt to return to Denmark.

Upon his return to the United States, Mr. Zaubi shuffled the children between Cleveland and Nemacolin, apparently in an attempt to conceal their whereabouts from appellant. They were not enrolled in school during this time and were kept under close surveillance by their father's family.

Appellant, after considerable searching, learned that the children were in Nemacolin in May 1978, and on May 15, 1978 filed a Petition for a Writ of Habeas Corpus in the Court of Common Pleas of Greene County. A hearing was scheduled for May 18, 1978 and service was effected on the Zaubi family in Nemacolin. Following a delay caused by Mr. Zaubi's flight from the jurisdiction of the lower court with the children, remedied by a contempt citation against the grandparents, a full hearing was held on June 20 and 21, 1978 with all parties present.

The court below decided that although the Pennsylvania Uniform Child Custody Act of June 30, 1977, (P.L. 29, No. 20, sec. 1 et seq., effective July 1, 1977, 11 P.S. §§ 2301–25), (the Act), compelled it to give full faith and credit to the Danish decree, the court was "duty bound" to consider whether such decree was in the children's best interest, and to modify the same if necessary.

The court used its discretion to award custody to appellee based on the threat of potential sexual abuse by the Danish grandfather, who had sexually abused appellant, his daughter, during her childhood. The court also noted that to return the children to Denmark would alienate them from their father, who faces kidnapping charges in that country.

We feel that the UCCJA compels that Pennsylvania courts not only recognize proper custody decrees from foreign nations, as the lower court admits, but also that they decline to accept jurisdiction to modify custody decrees in the absence of the showing of conditions in the custodial household that are physically or emotionally harmful to the children. Where, as here, the only changed condition is that the children have been abducted from the jurisdiction issuing a valid custody decree, the UCCJA clearly intends that our courts enforce the foreign decree. Therefore we must reverse.

The lower court used as authority for its decision to modify the Danish decree § 2309(b) of the Act which reads:

(b) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction unless the petitioner can show that conditions in the custodial household are physically or emotionally harmful to the child, the burden of proof

being on the petitioner requesting the court to take jurisdiction.

■ The court below needed to find that there were conditions in the Danish household which threatened physical or emotional harm to the children. We feel that the father's inability to return to Denmark to visit his children as a result of the criminal charges pending against him in that country is invalid as a basis for jurisdiction. Appellee took the children out of Denmark in violation of a valid custody decree issued pursuant to several hearings and appeals, the final appeal of which was indeed still pending.

■ When a Pennsylvania court is asked to modify the custody decree of a foreign court it must be governed by the provisions of the Act. The purpose of the Act is to provide stability to the home environment and to family relationships by discouraging continuing controversy over child custody and visitation; to avoid jurisdictional disputes; to deter abductions; to avoid relitigation insofar as feasible; to promote comity and to assure that litigation concerning child custody takes place ordinarily in the state in which the child and his family have the closest connection. This places a rather heavy burden on any parent who abducts his child and goes forum shopping to prove that the court issuing the original decree was not acting in the child's best interest.

■ Section § 2309 of the Act, by permitting modifications of original custody decrees, goes against the grain of the main purpose of the Act, and therefore this court should but sparingly use its discretion to invoke it.

■ We have examined the record carefully and it is our opinion that appellee failed to meet this burden in the lower court. Appellee introduced testimony of the potential for sexual abuse by the maternal grandfather, who lives near the mother in Copenhagen. We are not demeaning the seriousness of these allegations by appellee, however, contrary to the assertion in appellee's brief before this court, these same allegations were made before the 14th Division of the City Court of Copenhagen at the time of the re-hear-

ing of the custody issue following the grant of a final divorce decree. The Danish Court, on pages 2–5 of the translated record, which has been made a part of the record in this case, considered the same allegations as made by appellee now, and on page 5 concludes, "The court finds that the evidence given in this case apparently does not warrant any change in the awarding of custody."

Appellee cannot be heard to complain about the Danish court's willingness to hear his case as appellee chose to flee Denmark before the date set for the final hearing.

None of appellee's allegations occurred subsequent to the final Danish custody decree and we will assume that the Danes are as cognizant of the dangers of child abuse as we are. Testimony was elicited from a neighbor of appellant's in Copenhagen as well as a specialist in child psychiatry, as to the children's condition. The Danish police submitted a report to the court of their investigation of the incidents involving the appellant's father, and we have every reason to believe that should further problems arise the Danes will be on notice of the danger and will be fully prepared to deal with it.

The allegations made by appellee against the Danish grandfather do not constitute true sexual abuse, as this court understands it, though they are indeed serious charges and give rise to a real fear that abuse may occur. One incident concerns the grandfather's attempt to have his grandson handle him while urinating; another involves raising the skirt of the three year old granddaughter and patting her on the rear end; and a third was the grandfather's comment to the father that the daughter ". . . will be good in bed in about eleven or twelve years." Appellant's statement that she would never give her father an opportunity to abuse her children was apparently given little credence by the court below.

The lower court reasoned that the admitted abuse of appellant by her father years ago, combined with the above mentioned incidents creates an emergency situation calling for a modification of the Danish decree.

We find most inappropriate the comment of the lower court disparaging the Danish courts:

"However, we cannot overlook the somewhat indifferent attitude with which this circumstance was presented, and are even more impressively struck to know that this man is not only still very much actively in her life, but also in that of his grandchildren's. We have no way of equating the cultural attitudes toward such a condition as this in Denmark as compared with our own, but we believe such a first generation child abuse, and its distinct possibility as a second generation child abuse, is a direct threat to the emotional and physical health of these children."

(Trial court opinion at 9)

The Commissioner's notes explaining the applicable section of the Act reads in pertinent part:

"in the case of illegal removal or retention refusal of jurisdiction is mandatory unless the harm done to the child by a denial of jurisdiction outweighs the parental misconduct."

(Uniform Child Custody Jurisdiction Act (U.L.A.) § 8).

■ Applying this standard to the present facts we find that the parental misconduct, the abduction of the children, outweighs the possibility of future abuse by the grandfather. We hasten to reiterate here that the lower court had before it the testimony of the mother that she had never left her children alone with her father for fear of possible abuse (N.T. 147). To hold otherwise would be, in effect, to say that the father was justified in illegally abducting his children from their mother, by whom they had been raised from birth, because of the mere possibility of abuse by a family member not residing in the children's home.

■ The Common Law of child custody also supports our decision. In any petition for a change in a valid custody order, the burden is on the petitioner to prove a change in circumstances since the original order. *Com. ex rel. Hickey v. Hickey*, 216 Pa.Super. 332, 264 A.2d 420 (1970). Appellee

did not introduce evidence below of a change in circumstances but rather relitigated the same facts as heard by the Danish court. Therefore, even without using the Act as authority, the lower court should have deferred to the facts as found by the Danish court.

The Supreme Court of California, in *Miller v. Superior Court of Los Angeles County*, 22 Cal.3d 923, 151 Cal.Rptr. 6, 587 P.2d 723 (1978), applied this provision of the Act in refusing to exercise jurisdiction to modify a custody suit previously litigated in Australia.

In *Miller*, the mother, a United States citizen, brought the children to California while they were in her custody during a visitation period. The father, an Australian citizen, brought suit in the California court to have the Australian decree given recognition. The Supreme Court of California affirmed the lower court's refusal to hear the merits of the mother's argument that a new decree was in the children's best interest by saying that the Act mandated that the Australian court retain exclusive jurisdiction. In its Order the California court directed the mother to turn over her children to the father for their return to Australia, in order to comply with the Australian decree.

■ In reversing the lower court we do not imply that the "best interest of the child" is not still the guiding light in child custody cases. What we are saying is that in the absence of changed circumstances it is in the child's best interest that custody matters be litigated entirely in the jurisdiction of the child's home. Our court previously refused to extend jurisdiction to a custody dispute involving a child from New York who was kept over during a visitation in Pennsylvania to see his father, *In re Sagan*, 261 Pa.Super. 384, 396 A.2d 450 (1978). The Act was cited as authority for the rule that unless the child has been abandoned or physically abused, physical presence of the child in Pennsylvania is not alone sufficient to confer jurisdiction on a Pennsylvania court.

The Order of the court below is vacated, custody of the children involved herein is restored to appellant in accordance with the decree of the courts of Denmark and the appellant is authorized to take the children to Denmark.