492 A.2d 427

**Santo AGATI, Anthony R. Agati and Stephanie V. Agati, Appellants,**

v.

**Judith AGATI.**

Superior Court of Pennsylvania.

Argued July 19, 1984.

Filed April 26, 1985.

134

Charles P. Gelso, Wilkes-Barre, for appellants.

Brian C. Corcoran, Richard M. Goldberg, Wilkes-Barre, for appellee.

Before CAVANAUGH, BECK and TAMILIA, JJ.

TAMILIA, Judge:

The appeal in this case follows denial by the trial court of the father's request for an Order awarding him shared physical custody of his son.

Anthony Agati, the only child of the parties, was born in 1979 and was four years old at the time of the hearing. The parties are divorced, having married in 1978. In August, 1981, Judge Patrick Toole entered a custody and partial custody Order from which no appeal was taken. Subsequently, the parties, by agreement, modified and extended that Order to accommodate their work schedules and to increase the father's weekend partial custody to include

Friday nights on alternate weekends *and* for alternating holidays (T.T. 34a). The father filed a Petition for Visitation [1] which requested an extensive increase in partial custody, in effect, to obtain shared custody as permitted under the Custody and Grandparents Visitation Act, 23 P.S. § 1001 et seq.

Following a hearing before a master to mediate the dispute on April 28, 1983, the case was appealed to the Common Pleas Court and the matter came to hearing before Judge Chester B. Muroski on October 3, 1983. By consent of the parties, the hearing incorporated without petition, consideration of the request of the paternal grandparents for separate partial custody. Following the hearing, during which an adequate record was made, an Order was expeditiously filed on October 4, 1983, from which this appeal was taken. An Opinion was filed by the trial judge, which in a comprehensive and careful manner, considered all issues raised. *Lewis v. Lewis,* 267 Pa.Super. 235, 406 A.2d 781 (1979).

Our scope of review in custody modification matters is governed by the law as it relates to initial custody hearings. The scope of appellate review in a custody matter is of the broadest type. An appellate court is empowered to determine whether the trial court's incontrovertible factual findings support the trial court's conclusions, but may not interfere with those conclusions unless they are unreasonable in light of the trial court's factual findings, and thus represent a gross abuse of discretion. *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800, 806 (1984); *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977).

The major issue in this case, as presented by the appellant, is whether a substantial change of circumstance is the legal standard to apply when a petition is heard for modification of a *partial* custody Order. Appellant argues it is

1. In reality, a Petition to Extend Partial Custody to include Shared Custody. *See* Actions for Custody, Partial Custody and Visitation of Minor Children, Pa.R.C.P. 1915.1 et seq.

not and would apply the best interest standard negating the need by the petitioner to prove a change of circumstance before reaching the merits of the case. We disagree.

■ At the outset, prior to the existence of a custody Order, the parties who are parents stand on an equal footing and the only burden carried by either of them is to establish what is in the best interest of the child. *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977); *Spriggs v. Carson, supra.*

It is tempting to modify a partial custody Order on the best interest of the child without first establishing a substantial change in circumstance. This would, however, be extremely destabilizing and could result in spurious petitions based on temporary or vacillating circumstances or a frequent relitigation of issues once resolved. One of the attributes of custody Orders is their temporariness and lack of finality, but change without careful discretion turn the courts into instruments of destruction. Virtually every custody Order also becomes a partial custody Order and while a modification of a custody Order (to bring about an absolute change in custody) requires a change in circumstance which imports some finality, the appellant would subject *partial* custody to constant tribulation when someone's perceived best interest test would be suggested, without first being required to show a change of circumstance. The question presents itself as to how one can, at the same time, maintain a change of circumstance standard for a total change of custody while permitting a review of partial custody on a best interest standard. Immediately presented is the additional problem of burden of proof. *See In re Custody of Hernandez, supra.* In *Spriggs v. Carson, supra,* the burden of proof as to best interest is equally apportioned between parents; would we now require that this concept be confused by requiring the party alleging best interest for modification of *partial* custody, carry the burden of proof as he would be required to carry the burden of establishing a change of circumstance? If the petitioners carried no burden in moving directly to consider-

ation of best interest without proof of change of circumstance, would it not be possible to change the custodial parent when it seemed in the best interest of the child to do so? In doing so, the requirement to establish change of circumstance for a total change of custody could be circumvented by petitioning for modification of partial custody. In various contexts, with the exception of the initial custody proceeding between parents, preliminary burdens of proof must be met before best interest can be considered. *See In the Interest of LaRue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976); *Matter of DeSavage*, 241 Pa.Super. 174, 360 A.2d 237 (1976); *In re Rose*, 161 Pa.Super. 204, 54 A.2d 297 (1947).[2] It would appear that we would be moving to a doctrine wherein best interest would control, regardless of whether the contest was between parents, as it would be difficult not to justify the same standard as it applied to parents and third parties. *See Spriggs v. Carson, supra* (Dissent by Justice Flaherty). It is probably illusory that a best interest test will produce any fairer result than the change of circumstances standard. Any change of circumstance which would result in a modification of the Order must also be in the best interest of the child and the court must so find. Once a full and comprehensive review of the case was had, and decision rendered awarding custody and partial custody, it must be assumed that to the degree possible, the best interest of the child was served. In practice, while the best interest standard purportedly governs the decisions in custody cases, as between co-equals, the line is so thin as to be virtually nonexistent thus subject to endless reinterpretation and reargument. Witness the result condemned by the Supreme Court in *Robinson, supra*, when this Court adopted an independent scope of review. If a request was made for a change in partial custody because of the best interest of the child, this could not be accomplished without doing harm to the doctrine of res judicata, permanency of decisions, and stability of the child, unless a sufficient change of circumstance was estab-

2. Child's dependency must be established before the court can consider best interest.

lished to warrant a modification, as the *then* best interest no longer applies. Change of circumstance is still the standard, which necessarily encompasses a consideration of the child's best interest. If it is truly in the best interest of the child to modify a partial custody order, it would be unlikely that there would be a lack of proof of change of circumstance.

An additional complicating factor which moves us to a more rigid compliance to the change of circumstance standard is the advent of the Uniform Child Custody Jurisdiction Act, 42 Pa.C.S. § 5341 et seq. *See Commonwealth ex rel. Zaubi v. Zaubi,* 275 Pa.Super. 294, 418 A.2d 729 (1980). The perplexing problem of child snatching and forum shopping required national cooperation to give some finality to custody Orders and a determined application of the change of circumstance requirement to avoid defeating the intent of the U.C.C.J.A.

Except in an initial custody action, best interest is generally the *second* consideration, there being an evidentiary gate which must be passed before it can be considered. Making best interest the gate instead of the support for custody decisions predisposes to irrational and/or untenable decisions. *See LaRue, DeSavage, Rose, supra.*

Some states have relied on section 407(b) [Visitation] of the Uniform Marriage and Divorce Act (UMDA) (1973) for introducing a new relaxed standard of best interest when modification of a partial custody Order is required.[3] This may well be a misinterpretation of that section as it relates to the act as a whole.

■ The UMDA section 407(b) on Visitation simply articulated the traditional rule that visitation was presumed to be in the best interest of the child, and that standard would apply in granting visitation, although an extraordinary standard of " 'seriously (endangering) the child's physical, mental, and moral, or emotional health would apply in *denying*

3. Arizona, Colorado, Illinois, Kentucky, Minnesota, Missouri, Montana and Washington are among those states.

visitation' " (Commissioner's notes). It does not appear that it was meant to be a different standard than applied in section 409 (Modification) which contains a change of circumstance *and* a best interest standard for modification. All sections of the UMDA must be read together and where possible consistent with each other. It would be untenable to find that a visitation or partial custody Order could be modified without also modifying the underlying custody Order. To the degree one adds or subtracts from the time and circumstances of a custody degree to enhance or restrict visitation or partial custody, it is a modification of the custody Order. The salient point is made by section 409(a), Modification, "No motion to modify a custody decree may be made earlier than 2 years after its date, unless the court permits it be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral, or emotional health." [4]

While this appears clearly to speak primarily to custody it must speak with equal force to visitation and partial custody as the effect of either the custodial or noncustodial environment is a critical consideration in custody and would subject the case to review under proper circumstances. While the UMDA makes no distinction between visitation and partial custody, Pennsylvania case law and rules make a very clear distinction. Pa.R.C.P. 1915.1(b) defines partial custody and visitation as follows:

Rule 1915.1(b) Scope. Definitions

'partial custody' means the right to take possession of a child away from the custodial person for a certain period of time;

. . . . .

'visitation' means the right to visit a child, but does not include the right to remove the child from the custodial person's control.

4. Kentucky has adopted section 409(a). *See S. v. S.,* 7 F.L.R. 2132 (1980).

This distinction is important as the UMDA does not spell out the difference between visitation and partial custody, thus we cannot be certain that they are considered the same and that the same standard of review would be applicable to both. It is far easier to advocate a relaxed standard for modifying a 'visitation' Order as opposed to a 'partial custody' Order.

With new concepts gaining vogue in custody cases, shared custody, joint custody and partial custody become a continuum with sole custody, upon which a decision is based. The line of demarcation becomes extremely blurred and it becomes increasingly difficult to determine, as between the two parents, who is the de facto custodian, especially when "shared custody" pursuant to Pa.R.C.P. 1915.1(b) is imposed. "Shared custody" means shared legal or shared physical custody or both of a child in such a way as to assure the child of frequent and continuing contact, including physical access, to both parents.

The "commissioner's notes" following section 409 point out,

> Most experts who have spoken to the problems of post-divorce adjustment of children, believe that insuring the decree's finality is more important than determining which parent should be custodian. See Watson, The Children of Armageddon: Problems of Custody Following Divorce, 21 Syracuse L.Rev. 55 (1969). This section is designed to maximize finality (and thus assure continuity for the child) without jeopardizing the child's interest.

In a renowned broadly publicized work, J. Goldstein, A. Freud and A. Solnit, *Beyond the Best Interest of the Child,* 97–101 (1973), the authors propose provisions for a child placement code and would deny visitation (partial custody) entirely. At Para. 30.5, Final Unconditional Disposal,

> All placements shall be unconditional and final, that is, the court shall not retain continuing jurisdiction over a parent-child relationship or establish or enforce such conditions as rights of visitation.

This proposal is obviously inappropriate to our philosophy and legal tradition. It does point out, however, the consequence of carrying the concept of best interest, to its ultimate conclusion, i.e. placing stability of the child (best interest) beyond any rights of parents.

Our rules make no distinction between full custody hearings and subsequent modification hearings, nor do they provide for a different procedure for visitation and partial custody as opposed to custody. To impose a new and different standard of review for partial custody would simply increase the vexation and the likelihood of rehearing, make less certain the appropriateness of a decision and assure a greater probability of chronic litigation. Nothing disturbs the child's perception of stability and harmony more than frequent litigation concerning him by his parents.

The need to establish change of circumstance in a modification hearing was reaffirmed by *Daniel K.D. v. Jan M.H.*, 301 Pa.Super. 36, 446 A.2d 1323 (1982), which stated, "Under current case law, (the) party seeking modification of (a) custody award continues to have (the) burden of proving (a) substantial change in circumstances which will justify (the) court's reconsideration of (the) extant custody award, . . . ." In footnote 2, 301 Pa.Superior Ct. at 40, 446 A.2d at 1324, the court quoted:

'To permit a party to relitigate a subject of relative fitness of parents to have custody of children by an inquiry into the same or other facts existing at the time of or prior to the former decree would lay a foundation for interminable and vexatious litigation. . . .' *Commonwealth ex rel. O'Hey v. McCurdy*, 199 Pa.Super.Ct. 22, 24, 184 A.2d 290, 291 (1962) (quoting *Commonwealth ex rel. Crawford v. Crawford*, 170 Pa.Super.Ct. 151, 154, 84 A.2d 237, 238 (1951) (further citations omitted).

■ For this reason as well as others cited above, the clear requirement of change of circumstance prior to application of best interest is necessary to avoid the uncertainty and instability that a best interest test alone would provide.

This is not the only time that a prior standard is required before looking to best interest, *Rose, supra* (a finding of dependency must be made before best interest can be considered), *La Rue, supra* (removal of a child from its home requires a finding of clear necessity rather than best interest). The change of circumstance requirement places the courts review of partial custody matters between the best interest standard espoused by the appellant and the denial of any review proposed by *Beyond the Best Interest of the Child, supra.* Here, the review was sought within one and one-half years of the original custody Order based primarily on the passage of time for a child who went from two and one-half to four years of age.

 In this case, the matter would have been resolved more expeditiously and without injustice if dismissed on the basis of failure to show a change of circumstance. However, the court did incorporate into the Order the increased periods of partial custody the parents themselves had worked out since the prior Order. This we approve since to a great extent the most satisfactory custody Orders are those in which the parents have worked out a reasonable accommodation. The court correctly determined on the facts that there were no changes of circumstance proven since the Order of August 13, 1983. It further determined that the case did not warrant consideration of expanded shared custody, which was an unnecessary finding in view of the prior one. We will not consider it further.

The one remaining issue relates to the oral request, acceded to by the parties, to consider independent partial custody for the paternal grandparents.

 The court found that the grandparents enjoy a regular, meaningful and significant relationship with their grandchild and frequently the overnight visits to the father have been spent at the home of the grandparents. In order to increase the grandparents time, it would be necessary to subtract from that of the mother. The lower court took into consideration the de facto arrangement worked out by

the father and his parents, and incorporated into the Order a direction that "one of the weekday periods for partial custody be a period in which the grandparents would be entitled to a period of partial custody as selected by the father and with his consent." This fulfills the requirements of the Custody and Grandparents Visitation Act, *supra,* and appears to be in the child's best interest. *Commonwealth ex rel. Zaffarano v. Genaro,* 286 Pa.Super. 436, 429 A.2d 17 (1981).

The Order of the court below is affirmed.

BECK, J., files a concurring opinion.

BECK, Judge, concurring:

I agree with the majority's decision to affirm the trial court's order of October 4, 1983. However, my reasons for affirmance differ from those expressed by the majority. Contrary to the majority, I would hold that a showing of a substantial change in circumstances is not a prerequisite to a hearing on a petition to modify partial custody.

The scope of appellate review in partial custody matters is analogous to that in custody matters. The appellate court is bound by the trial court's factual findings if supported by competent evidence of record. *Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 478 A.2d 800 (1984). The scope of appellate review is otherwise broad. *Id.; Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977); *In re Donna W.,* 325 Pa.Super. 39, 472 A.2d 635 (1984).

Three issues are raised in this child custody case: (1) whether a parent seeking modification of a partial custody order must make a threshold showing of changed circumstances before the trial court may hear the petition on its merits; (2) whether the trial court erred in denying the father's petition for shared custody, and (3) whether the trial court erred in denying the paternal grandparents' petition for separate partial custody.

## I. Modification of Partial Custody

The initial issue in this case is whether a parent seeking modification of partial custody must make a threshold showing of changed circumstances before the trial court may hear the petition on its merits. The appellant argues that he need not, and I agree.

It is clear that the petitioner who seeks modification of a child custody order must preliminarily show a change of circumstances. *English v. English*, 322 Pa.Super. 234, 469 A.2d 270 (1983); *Daniel K.D. v. Jan M.H.*, 301 Pa.Super. 36, 446 A.2d 1323 (1982). Whether a showing of changed circumstances is required as a predicate to modify partial custody is not entirely clear from case law. *See Commonwealth ex rel. Hickey v. Hickey*, 216 Pa.Super. 332, 264 A.2d 420 (1970), *allocatur denied* (changed circumstances required for petition to modify partial custody order). *But see Bury v. Bury*, 312 Pa.Super. 393, 458 A.2d 1017 (1983) (best interests of child standard applied to petition for expanded partial custody, no mention of changed circumstances); *In re Stuck*, 291 Pa.Super. 61, 435 A.2d 219 (1981) (best interests of child standard applied to petition to modify partial custody order, no mention of changed circumstances).

Seeking guidance, I examine how other jurisdictions have resolved this issue. Some states require a petitioner to show significant, or at least, some change in circumstances before a petition for modification of partial custody will be considered on its merits. These states include Indiana, *State ex rel. Jemiolo v. LaPorte Circuit Court*, Ind., 442 N.E.2d 1060 (1982); Maryland, *Kemp v. Kemp*, 287 Md. 165, 411 A.2d 1028 (1980) (dicta), and New Jersey, *Hoy v. Willis*, 165 N.J.Super. 265, 398 A.2d 109 (1978) (dicta).[1] Other

---

1. New York treats identically the modification of custody orders and partial custody orders. A trial court may modify any custody order where under the totality of the circumstances, including the existence of a prior order, the best interests of the child will be served by a modification. *Friederwitzer v. Friederwitzer*, 55 N.Y.2d 89, 432 N.E.2d 765, 447 N.Y.S.2d 893 (1982); *Larisa F. v. Michael S.*, 120 Misc.2d 907, 466 N.Y.S.2d 899 (N.Y.Fam.Ct.1983).

states allow modification of partial custody orders under standards more flexible than those for modifying custody orders. *See, e.g., In re Stevens,* 86 Mich.App. 258, 273 N.W.2d 490 (1979); Mich.Comp.Laws § 722.27(b); Tex.Fam. Code Ann. § 14.08 (Vernon).

Several states have adopted the flexible standard of Section 407 of the Uniform Marriage and Divorce Act (1973) [UMDA][2] and hold that a court may entertain a petition to modify partial custody whenever modification would serve the best interests of the child.[3] The petitioner is not required to show change of circumstance as a predicate to a hearing on the merits.

I would adopt the standard of Section 407(b) of the UMDA and hold that a court may modify an existing partial custody order whenever modification would serve the best interests of the child. The petitioner need not show changed circumstances.

I would adopt this flexible standard because I believe that amendments in partial custody do not affect the child's basic stability in the same way that changes in custody do. Unlike a change in custody, a modification of partial custody does not remove the child from the sure and strong home base with the custodial parent. Shifts in partial custody may be necessary to accommodate a growing child's changing schedule of activities or desire to spend more or less time with the non-custodial parent. Or these shifts may be indicated because the non-custodial parent's life has stabilized and he or she may be in a position to assume a more significant parental role. The growth of a child is not static, but dynamic. As the child grows and matures, changes in partial custody may be indicated, and it is desirable that the party petitioning for such change be heard in court.

**2.** These states include Arizona, Colorado, Illinois, Kentucky, Minnesota, Missouri, Montana, and Washington.

**3.** The UMDA contains two standards. Section 407 relates to partial custody and Section 409 relates to custody and imposes a stricter standards.

The majority inappropriately equates partial custody with custody and argues that the same principles apply to both. I disagree. To the extent that the law can provide flexibility in parent-child relationships, it should. All families, whether intact or divided (by divorce) are dynamic entities, changing as individual members of the family mature. For the law to make rigid rules relating to family relationships under the banner of maintaining stability will not achieve a beneficial result for the family. The status quo will be preserved at the risk of disregarding or thwarting the development of family members and familial interrelationships.

The majority injects needless rigidity because it fears "spurious petitions based on temporary and vacillating circumstances" and is concerned that "change without careful discretion turns the courts into instruments of destruction." Slip op. at 433.

I do not share the majority's fear. I do not believe that the flexibility I advocate would send parents rushing to the courthouse to resolve questions of partial custody. For the most part, parents recognize that such actions are disruptive to children, as well as to themselves, and the cost of pursuing court action imposes economic burdens on each parent. Parents' reluctance to use the courts to adjudicate custody matters has been reflected in recent years in a marked decline in custody and partial custody litigation. The vast majority of custody and partial custody arrangements evolve in the lawyers' offices, not in the courthouse. The law established by the appellate courts sets guidelines for such non-judicial negotiations. Parents who know that their partial custody agreements will not be inflexibly interpreted by the courts are more likely to negotiate sensible partial custody schedules between themselves because they know the schedules can, without a showing of changed circumstances, be revised to accommodate developments in their lives. Flexibility is certainly to the parents' advantage, but more importantly, it serves the children's best

interests by permitting them to adjust more readily the time spent with each parent.

The majority does not recognize the vast difference between custody and partial custody. The former represents core stability for the child while the latter does not have as pervasive an impact on the child's life. Therefore, this court should not obdurately advocate the same rules for both under the guise of achieving uniformity in the law.

Although in the case before us the trial court articulated that it was not empowered to hear a modification absent changed circumstances, it nevertheless heard the matter on the merits, developed a comprehensive record,[4] and wrote a thorough and well considered opinion supporting its decision to expand the father's partial custody. *See In re Custody of Hernandez;* 263 Pa.Super. 312, 397 A.2d 1225 (1979); *Daniel K.D.*

Based upon the extensive record and the trial court's thorough opinion, I conclude that the trial court's order expanding the father's partial custody was grounded on competent evidence of record and made in the best interests of the child. That is, I find that the trial court properly modified its 1981 partial custody order.

Prior to the hearing, the parties had informally modified the original 1981 court order so that the father enjoyed expanded partial custody. On alternate weekends, the child spent time with the father from Friday at 5:30 PM to Sunday at 8:30 PM. For six weekends during the summer of 1982, the child was with him from Thursday at 5:30 PM to Monday at 8:30 PM.

In his 1983 modification petition the father requested that the child be with him overnight during his weekday partial custody, that he be granted partial custody for a total of six weeks during the summer, and that major holidays be divided on an alternating basis.

4. The hearing was not limited to consideration of the petition for expanded custody, but testimony was also taken relevant to the petition for shared custody and grandparent partial custody. Therefore, testimony was not limited to the issue of changed circumstances.

The record indicates that the father has been able to maintain a close and meaningful relationship with his son. The mother recognizes the importance of this relationship. This schedule has proved workable, has not placed an unfair burden on either party and has been beneficial to the child. That the father desires additional partial custody is understandable. I however, find that the trial judge carefully considered the matter and sensibly accommodated the needs of the parents in light of the best interests of the child.

All parties agree that the child is a healthy young boy who is thriving. The trial court's decision not to expand weekday contact to include overnight periods serves the best interests of the child. The child is about to enter school and the court found the overnight stay during the week night to be disruptive. In actuality, the father's request would afford little additional waking time between father and son.

Similarly, I conclude that the two week vacation period which the trial judge awarded serves the child's best interests. I note that the 1983 order gives the father vacation time which he did not have under the original 1981 partial custody and thereby affords the father and son more uninterrupted contact. During the rest of the summer, of course, the father will continue to have weekday and weekend contact as allowed by the regular partial custody schedule.

The trial court's order also provides a detailed, even-handed holiday schedule which is designed to resolve the parties' dispute regarding these periods.

I would, therefore, affirm the schedule which the trial court established in its order.

## II. Shared Custody

The father also argues that the trial court erred in denying his petition for shared custody. *See* Section 11 of the Custody and Grandparents Visitation Act ("Act"), Act of Nov. 5, 1981, P.L. 322, 23 P.S. § 1011. The Act grants the trial court broad discretion in awarding shared custody.

*See* Section 11 of the Act. *In re Wesley J.K.*, 299 Pa.Super. 504, 445 A.2d 1243 (1982), outlines the factors that the trial court must consider: whether both parents are fit and desire continuing, active involvement with the child; whether the child sees both parents as sources of security and love, and whether the parents are able to communicate and cooperate with each other to promote the child's best interests.

In the case sub judice the trial court considered the pertinent factors and concluded that because of the bitterness between the parties, shared custody "simply will not work under the circumstances." Opinion at 20.

Although the record indicates that the parties cooperated in revising the partial custody schedule to accommodate changes in work schedules, the record also reveals that they do not sufficiently cooperate to make a shared custody arrangement workable. For example, they were not able to resolve a 1982 Christmas schedule dispute without emergency court intervention. Both parties testified that differences of opinion about the child often result in arguments. The trial court found that the father refuses to inform the mother of the child's whereabouts when he has partial custody, and has even refused to provide her a phone number when he takes the child outside the town.

After a thorough and independent review, I conclude that the trial court properly determined that shared custody would be inappropriate at this time.

### III. Grandparents' Partial Custody

Finally, the grandparents argue that the trial court erred in denying their request for separate daytime partial custody under Section 13 of the Act, 23 P.S. § 1013. I disagree.

Section 13 provides:

### § 1013. **When parents' marriage is dissolved**

In all proceedings for dissolution, subsequent to the commencement of the proceeding and continuing thereafter, the court may, upon the request of the parent or

grandparent of a party, grant reasonable visitation rights to the unmarried child, after dissolution of marriage, if it finds that visitation rights would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application.

The paternal grandparents in this case requested separate partial custody from 9:00 AM to 4:00 PM on one weekday every other week so that they would have time of their own with Anthony and could enable Anthony to see their friends and relatives who were unavailable on weekends.

The uncontradicted testimony reveals that the grandparents regularly spend meaningful periods of time with their grandson during the father's partial custody period and that they have a strong, loving relationship with him. The mother has no objection to this arrangement but would not want the child's schedule further disrupted by separate grandparent visitation during the week.

The trial court denied the grandparents' request because under the existing arrangement the grandparents enjoyed sufficient periods of contact to maintain their relationship with the child. The court determined that the best interests of the child would be served by retaining the status quo. Accordingly, the court ordered that on alternating weeks the father's weekday evening be spent with the grandparents.

I conclude that the trial court did not err. It is clear from the record that the child and his grandparents are able to maintain a thriving relationship under the existing partial custody schedule. It is in the best interests of the child to continue that arrangement.

Accordingly, I would affirm the trial court's order of October 4, 1983.