506 A.2d 405

**In re CONSTANCE W.**

**Appeal of Gary HOOVER, Father.**

Superior Court of Pennsylvania.

Argued Oct. 30, 1985.

Filed Jan. 31, 1986.

Thomas C. Panian and B. Kirk Holman, California, for appellant.

Gregory C. Hook, Waynesburg, for appellee.

Before WIEAND, DEL SOLE and HESTER, JJ.

DEL SOLE, Judge:

Before this Court is the propriety of an order suspending the natural father's visitation rights of his daughter, Constance W., for a period of one year. For the following reasons, we reverse.

The facts pertinent to our review are: prior to the child's birth on November 26, 1983, Appellant, the natural father, filed a petition to determine paternity. Blood tests proved Appellant to be the child's father. In August of 1984, the Appellant was granted visitation rights, and on October 2, 1984, Appellant petitioned for custody. A hearing was held on October 18 of that year, and the court granted full custody to the mother and partial custody to the father. A clarification of the court's order was requested and granted in February of 1985.

Children and Youth Services of Greene County became involved in the case upon the father's allegations of abuse and neglect of Constance by her mother. CYS initiated dependency proceedings. The hearing was not held because the parties entered into a stipulation that the child was not abused or neglected, and therefore, the dependency action was dismissed. The court issued an order on March 19, 1985 finding no abuse.

Children and Youth Services filed a second petition for dependency on April 30, 1985 because Constance was found to have three cigarette-type burns on her hand. Both parents testified, and the court found no abuse while noting that it was not satisfied with either parent's explanation. The child was adjudicated dependent because of immature and irrational conduct of the parents. The Appellant was given full custody in alternate months.

On June 3, 1985, the Appellant was in a tavern when he received a call from an anonymous caller who said that the mother, Sherry, had taken the child to North Carolina and

would not be bringing her back. Appellant then called Sherry's sister-in-law, who resided in North Carolina and with whom he suspected Sherry was staying. The call was placed around 1:00 a.m. on June 4. Appellant threatened Sherry's husband with the police and the FBI. He said that he would come down with his friend, "the Hulk", and take the child back to Pennsylvania. Other threats were made that the child would be better off if Sherry were dead and he could see that it was done. Sherry's husband testified that when the call was made, she was still in Pennsylvania.

Appellant consulted Officer James Popielarcheck of the East Bethlehem Township Police Department who called the North Carolina number and asked to speak with Sherry. He was told by a woman that she was unable to come to the phone. The provision contained in the court's May 31 order was that:

[i]f the mother as now planned goes to North Carolina and makes her residence the child shall continued in the custody of the father.

The officer told the woman that he would transfer this order to the North Carolina Sheriff. The officer testified that that night Appellant was not drunk but had been drinking.

The following day, Appellant went to the Greene County District Attorney's Office. The Assistant District Attorney told him there was no crime and that she could do nothing. She testified that Appellant became frustrated and irrational.

The mother filed a Petition for Reconsideration of Custody, and the court held a hearing on June 26, 1985. Psychological reports were admitted at the hearing. The Appellant was described as a "repulsive individual with limited tolerance for frustration." It was suggested that the Appellant was attempting to maintain a relationship with Sherry through the child. Sherry testified at the hearing that he would often call her three times a day to inquire about the child. There was evidence at the hearing that the Appellant wanted Sherry to take his picture with her if she

moved to North Carolina and that he would take her back if she wanted to have a relationship again.

The court issued an order finding that the child was not dependent when in the custody of the mother. In the order of June 26, 1985, the court found that because the father had illustrated hostile and irrational behavior in the late-night phone calls to and harrassment of the natural mother, that it was in the child's best interest that Appellant be denied all custody and visitation privileges for one year. It is from this order that Appellant appeals. The issues raised are:

1. Did Appellant receive adequate notice that his parental rights were in jeopardy?

2. Did the trial court effectively involuntarily terminate Appellant's rights to his daughter?

3. Did the trial court have a factual basis for denying or limiting Appellant's visitation with or custody of his daughter?

4. Did the trial court have a legal basis for denying or limiting Appellant's visitation with or custody of his daughter?

5. Should the determination below withstand Appellate scrutiny under the principles enunciated by this Court?

The U.S. Supreme Court has found that because of the fundamental interest of a parent in the care and welfare of their children, courts are to strictly scrutinize the procedures applied by the state in the disposition of custody cases.

The fundamental liberty interest of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family

affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.

*Santosky v. Kramer*, 455 U.S. 751, 753–54, 102 S.Ct. 1388, 1394–95, 71 L.Ed. 599 (1982).

Recently, this Court has reiterated the standard of review to be applied by appellate courts in custody cases. We said:

▇▇▇ Our scope of review in custody modification matters is governed by the law as it relates to initial custody hearings. The scope of appellate review in a custody matter is of the broadest type. An appellate court is empowered to determine whether the trial court is empowered to determine whether the trial court's incontrovertible factual findings support the trial court's conclusions, but may not interfere with those conclusions unless they are unreasonable in light of the trial court's factual findings, and thus represent a gross abuse of discretion. *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800, 806 (1984); *Commonwealth ex rel. Spriggs v. Carson*, 470 Pa. 290, 368 A.2d 635 (1977).

*Agati*, 342 Pa.Super. 132 at 135, 492 A.2d 427 at 428 (1985).

The trial court, after hearing evidence, determined that: "the father has been unnaturally and unreasonably harassing the child and the family, the court further finding this not to be in the best interest of the child and being apparently a satisfaction of parental design and the court further finding the same to be a danger and a threat to the safety and security of the child as well as other parties." After thoroughly examining the record, we find that the trial court abused its discretion in interpreting the evidence to justify the strict imposition on the father's visitation rights. We do not find that the father's actions amounted to a threat to the well-being of the child.

Appellant points out to this Court that the relevant law in this State is whether the father's conduct can be shown by the mother to have a harmful effect of the child. *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555

(1981); *Commonwealth ex rel. Myers v. Myers,* 468 Pa. 134, 360 A.2d 587 (1976); *Burr v. Morgart,* 339 Pa.Super. 341, 488 A.2d 1155 (1985).

The record shows that even though the father may have acted unreasonably and possibly irrationally towards the mother when he was told that she had taken the child out of the jurisdiction, his actions never affected his relationship with the child. Even if the trial court accepted as true the psychologist's conclusion that the Appellant was attempting to maintain a relationship with the mother through the child, it is the child who is ultimately benefiting. Appellant's mother testified as to the loving and caring relationship between father and daughter. In refuting the mother's claim that the father should be denied visitation because of his conduct, Appellant cites *Commonwealth ex rel. Pierce v. Pierce, supra,* for its similar factual scenario. In *Pierce,* the Court found that despite an incident where the father, upset about the mother's behavior, pointed a gun at the mother, this incident had no effect on his relations with his daughter. The father's "impulsive and somewhat irrational behavior" was not aimed at the child. The trial court's denial of custody to the father was reversed. We find that Appellant's argument is persuasive and consistent with a reasonable interpretation of the facts.

While we are aware that the court did not approve of Appellant's behavior towards the child's mother, the termination of the father's visitation rights for one year is not consistent with the child's best interests. Appellant argues that this, in effect, is terminating parental rights without the benefit of notice and other proper procedures. We note that one year is a long time in the evolution of the parent-child relationship.

It has long been against our public policy to limit or destroy the relationship between parent and child ... Every parent has the right to develop a good relationship with the child, and every child has the right to develop a good relationship with both parents.

*Fatemi v. Fatemi*, 339 Pa.Super. 590, 597, 489 A.2d 798, 802 (1985).

In *Fatemi*, one parent requested the court to impose a restriction of custody for the child. This Court explained:

[T]o avoid unduly impinging upon a parent relationship, *a court must sparingly impose restrictions on the relationship ... and must furthermore impose at least intrusive restriction(s) reasonably necessary to assure the child's welfare.* [Emphasis added].

*Fatemi*, 339 Pa.Super. at 597, 489 A.2d at 802.

We find, therefore, that the court below failed to adequately weigh lesser restrictive alternatives (i.e. supervised visitation, etc.) which are in the best interests of the child and in protection of the parent-child relationship.

Therefore, we reverse and remand for a redetermination of custody and visitation rights consistent with this opinion.

Jurisdiction relinquished.

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting:

I respectfully dissent. I would affirm on the opinion of the court below, President Judge Glenn Toothman. My review of the record leads me to conclude that the best interests of the child mandate that we affirm.