437 Pa. Superior Ct. 534 (1994)
650 A.2d 882
Anthony SULLIVAN, Appellant,
v.
Tricia SHAW, Appellee.
Superior Court of Pennsylvania.
Submitted July 11, 1994.
Filed November 14, 1994.
*535 Anthony Sullivan, pro se.
Tricia Shaw, pro se.
Before OLSZEWSKI, TAMILIA, and HOFFMAN, JJ.
OLSZEWSKI, Judge:
Anthony Sullivan is an inmate at the State Correctional Institute in Greensburg, just outside of Pittsburgh. He filed a *536 pro se petition in the Court of Common Pleas of Philadelphia County seeking visitation rights with his daughter, Latifah. The trial court denied the petition because it found that Latifah's mother has no car and cannot afford to make the trip to Greensburg. It also held that forcing Latifah to travel was not in her best interests. We are constrained to vacate and remand.
Latifah is three years old and was born out-of-wedlock. She resides with her mother in Philadelphia. Although the record does not disclose the nature of Sullivan's offense, he is eligible for parole in 1998. He began serving his sentence in 1991 at Camp Hill.[1] While he was there, Latifah's mother took Latifah to visit him at least six times. Now that he has been transferred to Greensburg, however, Latifah's mother claims that she cannot afford to take Latifah to visit her father. Sullivan then filed this petition, seeking a judicial declaration that he is entitled to visit with Latifah. The trial court scheduled a hearing for July 20, 1993 and ordered that Sullivan be brought to Philadelphia on that date. Sullivan did not appear at the hearing, however, because "the Sheriff's Office did not produce the father, but mother appeared at the hearing." Trial court opinion at 2. The court then denied Sullivan's petition in his absence, writing:
In custody and visitation cases, the paramount concern is the best interest of the child. The Court agrees that a determination of where those interests lie can only be made on the basis of a reasonably complete record. Appellant was not brought down to the hearing as Ordered by Judge Tereshko. However, the Court inquired as to the basi[c] ability of the mother to honor a custody order. The Court believes that it is a threshold question for if as here the mother cannot transport the child to the prison and back in *537 a reasonable period of time, to hold an extended hearing would serve no useful purpose.
Even if the mother could financially afford to transport the three year old to this prison, the Court would find that it is not in the child's best interest to be forced to travel five (5) hours in a vehicle to visit the prisoner for a short period of time and drive five hours home.
The Court believes there is a sufficient record to justify the Court's decision without the necessity of transporting a prisoner ten (10) hours across the Commonwealth of Pennsylvania.
Trial court opinion at 2-3. Sullivan claims, among other things, that his due process rights were violated by the state's refusal to take him to the hearing. We disagree, but must nonetheless remand for a fuller hearing.

I.
It is well-established that a parent's right to have meaningful communication and visitation with his child is a liberty interest protected by the United States Constitution. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Our appellate courts have stated quite clearly that
[i]t has long been against our public policy to limit or destroy the relationship between parent and child. . . . Every parent has the right to develop a good relationship with the child, and every child has the right to develop a good relationship with both parents.
In re Constance W., 351 Pa.Super. 393, 398, 506 A.2d 405, 408 (1986) (quoting Fatemi v. Fatemi, 339 Pa.Super. 590, 597, 489 A.2d 798, 802 (1985)). Thus, "even when sole legal and physical custody is awarded to one parent, Pennsylvania courts scrupulously protect the non-custodial parent's right to maintain a meaningful parental relationship with his or her child." Zummo v. Zummo, 394 Pa.Super. 30, 45, 574 A.2d 1130, 1138 (1990).
Since the trial court's order deprived Sullivan of a protected liberty interest, he had a right to procedural due *538 process, which necessarily includes an opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). Sullivan argues that he should have been transported across the Commonwealth to attend the visitation hearing in Philadelphia. Since the court system failed to do this, he requests a new hearing where he can be present, or can at least present evidence on his own behalf.
Incarcerated prisoners who petition the court for visitation rights are entitled to a hearing, to notice of this hearing, and to notice of their right to request that they be present at the hearing, by means of a writ of habeas corpus ad testificandum. Vanaman v. Cowgill, 363 Pa.Super. 602, 526 A.2d 1226 (1987). A court need not grant the habeas petition and order the prisoner's presence, but it may not ignore it either. Rather, the court must weigh the costs of a bring-down against the prisoner's interests in presenting testimony in person. Salemo v. Salemo, 381 Pa.Super. 632, 634, 554 A.2d 563, 564 (1989) (citing Jerry v. Francisco, 632 F.2d 252 (3d Cir.1980)).
Here, Sullivan had filed a petition for a writ of habeas corpus ad testificandum on July 11, 1993, one day before the original scheduled hearing date. On July 12, Judge Tereshko of the Philadelphia Court of Common Pleas found that there was insufficient time to secure Sullivan's presence at that hearing, so he ordered that the hearing be rescheduled for July 20, with Sullivan present. When, for no apparent reason, authorities failed to produce Sullivan on July 20, Judge Stephen Levin held the hearing in his absence and denied his petition. The record reveals neither why Judge Tereshko felt that Sullivan's presence was necessary at the hearing, nor why Sullivan was not brought down as ordered. From the paucity of the record, one might assume that the court below presumed that Sullivan had an absolute right to be present at the hearing. Indeed, a casual reading of Vanaman, supra, conveys this impression.

*539 II.
We question the presumption that bring-down orders should routinely be granted in such cases. "Due process is flexible and calls for such procedural protections as the situation demands." Mathews, 424 U.S. at 334, 96 S.Ct. at 902. Mathews allows the government to tailor the amount of procedural protection to the situation by balancing the marginal value of additional protections against the marginal costs such additional protections would impose on the government. 424 U.S. at 335, 96 S.Ct. at 903. Prisoners' claims can be heard without their being removed from prison and physically brought to court. Transporting prisoners across the state imposes a considerable burden upon the Commonwealth. We think this burden will usually outweigh any risk of erroneously depriving prisoners of their legitimate expectations of visitation with their children.
In the present case, Sullivan has not responded to the trial court's determination that visitation would be impractical and not in Latifah's best interests. Rather, Sullivan has chosen to press his claim that he must be allowed to get out of his prison cell in Greensburg and be taken to Philadelphia to attend a hearing. We have no idea if Sullivan even has anything to say in response to the trial court's findings.
We think that a more reasonable approach would be to allow Sullivan to file an informal brief with the trial court where he would offer his solution to the problems of visitation. Perhaps Sullivan could pay for bus tickets and a motel room, or perhaps he has relatives or friends willing to help transport Latifah and her mother across the state. Since frequent ten-hour round trips would clearly overburden young Latifah, perhaps Sullivan would be willing to propose a reasonable visitation schedule  every few months, or once or twice a year. If Sullivan has anything to offer towards a solution then the trial court could, at its discretion, order that Sullivan be brought down to Philadelphia to work out the details. The trial court could also arrange a visitation plan without having Sullivan brought down, or could dismiss the petition if Sullivan *540 can offer no reasonable means of overcoming the obstacles to visitation.
We think that allowing the trial court to make such a preliminary determination upon the prisoner's written submission best conserves the Commonwealth's resources without increasing the risk of erroneous deprivation. As long as prisoners seeking visitation have the opportunity to tell the court how they would marshall their resources to enable visitation, then they have a meaningful opportunity to be heard. Where these resources are most likely lacking, we think that routinely bringing down prisoners to hearings is an exercise in futility. The Commonwealth's time and money would be better spent on helping arrange and support visitation plans in those cases where visitation has first been shown to be a reasonable and practical option.

III.
Here, however, the trial court did not afford Sullivan even this opportunity to be heard. When Sullivan did not materialize at the hearing, the trial court inquired no further into his absence. The only testimony the court heard was from Latifah's mother that she lacked the means to drive from Philadelphia to Greensburg. The mother never testified that she did not want to continue visitation with Sullivan or that she thought the trip would be too much for young Latifah; she only stated that she could not make the trip. The trial court decided that this was enough information to determine that Latifah should never make the trip. But the court made this determination without giving Sullivan any opportunity to be heard. Such truncated procedure does not comport with due process.
Indeed, Sullivan requests in his pro se brief that if he is not brought down to Philadelphia, that he at least be given some "opportunity to be heard and to present evidence in his own behalf." Appellant's brief at 12. This opportunity could be afforded by allowing Sullivan to submit an informal brief as discussed above. After hearing Sullivan's side, the trial court could make an informed determination as to whether Sullivan's presence is necessary at a hearing, or whether a bring-down *541 would serve no useful purpose. In order to best effectuate justice and efficient use of the Commonwealth's judicial resources, we will vacate both Judge Levin's order dismissing Sullivan's petition and also Judge Tereshko's order requiring his presence at the Philadelphia hearing, and give the parties a chance to start the proceedings anew.
Orders vacated, and case remanded. Jurisdiction is relinquished.
TAMILIA, J., files a dissenting Opinion.
TAMILIA, Judge, dissenting:
I respectfully but strenuously dissent. I believe the trial court approached this case in the proper sequence, determining first what was in the child's best interest in assessing the need to proceed further. Once a cogent decision was made that it was not in the child's best interests to be transported across the state for visitation of limited duration and questionable value, considering the child's tender age of three years, there was no need to proceed further.
I disagree with the majority that there is a liberty interest which requires appellant's presence under all circumstances. This presumes that, upon notice, the father is willing and able to be present. It is not uncommon for persons in distant parts of the country, who wish to contest visitation or custody, to be unable to do so personally for lack of funds or available time. Likewise, a parent incarcerated out of state could not expect to be transported to a court in Pennsylvania for a custody or visitation hearing. Undoubtedly, absent any sound basis that would preclude the child's availability to the father, his right to a hearing to obtain visitation would be enforceable and visitation ordered. However, under these circumstances I believe the trial court must have some leeway to make a predetermination as to the reasonableness of the claim for visitation. What if the child was handicapped or in some manner incapable of long distance travel, or no person was available to transport the child or for any other of a myriad of factually sound reasons visitation was inappropriate? The most striking situation would be the case where a parent had *542 engaged in brutal sexual or physical abuse of the child requiring incarceration of the father. The Custody Act, 23 Pa.C.S. § 5301 et seq., provides explicit directions to consider criminal conduct in determining custody or visitation awards. Among the crimes which are to be considered, including abusive conduct as defined under the Protection From Abuse Act, 23 Pa.C.S. § 6101 et seq., are criminal homicide, kidnapping, unlawful restraint, rape, statutory rape, involuntary deviate sexual intercourse, indecent assault, incest, endangering welfare of children, prostitution and sexual abuse of children, pursuant to section 5303(b). To force the child to endure visitation or to even be present at hearings to test the father's right, when many of those offenses are implicated, would inflict additional trauma on an already permanently damaged personality. Trial courts should be able to have a predetermination hearing before the process goes further. See Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The incarceration of the father, and his lack of capacity to exercise his rights to the extent of a person not so restrained, must be considered in relationship to the frivolousness of the demand.
Violation of the laws with its resulting confinement subsumes very serious restrictions on the freedom to do many things and to exercise many rights, the least of which is to have a normal relationship with one's family. If the right to retain that relationship was fundamentally irrevocable, we would require prisons to provide condominium-like resources to enable the family to retain at least a quasi-normal relationship between the inmate and his/her family. Women with children born in prison are separated from them and not all are guaranteed the access that appellant demands here. Nothing could be more important for an appellant incarcerated for murder or any other crime, who elects to defend himself pro se on appeal, than to be present to argue his case in court. This case has been appealed pro se and the appellant is not entitled to be present in court to argue his appeal. Yet we deny this right although the Constitution guarantees every defendant the right to be his own counsel. If the situation were otherwise, the highways and byways of the *543 Commonwealth would be clogged with inmates filing petitions for visitation or regarding other family matters to the extent that the critically burdened sheriffs' departments and local restraining facilities would face collapse. Prisoners will do anything possible to obtain even a brief respite from the ardors, boredom and pressures of long-term confinement.
The case most frequently cited to clarify due process issues as they relate to state intervention or court and governmental policies relating to hearings and due process is Mathews, supra. The test for purposes of determining the constitutional adequacy of a proceeding in relation to due process generally requires consideration of three distinct factors: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and 3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Another important factor in assessing the impact of official action on the right is the possible length of deprivation of benefits to the individual. While Mathews involved administrative hearings, the circumstances of this case lend themselves to a similar consideration. There, the United States Supreme Court stated:
The judicial model of an evidentiary hearing is neither a required, nor even the most effective method of decision making in all circumstances. The essence of due process is the requirement that `a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.' All that is necessary is that procedures be tailored, in light of the decision to be made, to `the capacities of those who are to be heard,' to insure that they are given a meaningful opportunity to present their case.
Id. at 348-349, 96 S.Ct. at 909, 47 L.Ed.2d at 41 (citations omitted). This could be accomplished by briefs filed by appellant, as suggested in the majority, and/or appointment of counsel to represent him preliminarily. This process does not rule out subsequent evidentiary hearings and judicial review before the claim becomes final.
*544 The majority cites leading cases which deal with the rights of parents to obtain visitation and custody of their children, all of which are within the context of normal family relationships or in dealings with state agencies attempting to limit the rights of parents who are not incarcerated. The situation of this case is unique and is not within the frame of reference posed in those cases. Indeed, courts in other jurisdictions have considered visitation rights of prisoners and have ruled both ways. See Matter of Marriage of Brewer, 13 Kan.App.2d 44, 760 P.2d 1225 (1988) (visitation denied; father in prison), but see McCurdy v. McCurdy, 173 Ind.App. 437, 363 N.E.2d 1298 (1977) (allowing visitation to a father in prison).
Where it appears that the demand for visitation would unequivocally inflict harm on the child, be impermissible because of the father's crimes or financially infeasible for the other parent, which can be predetermined in a preliminary proceeding, I believe the demand for presence at a hearing is not one that is invariably required.
I would, therefore, affirm the Order of the trial court.
NOTES
[1] The record also does not disclose why it was necessary to transfer Sullivan to an area which makes visitation with his family difficult. We, of course, cannot question that the transfer was appropriate, but we do wonder whether Sullivan asked the Department of Corrections, through the appropriate procedure, to take his familial circumstances into account in placing him.