J-S34003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.A.A.F.M., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF M.C., FATHER | No. 293 EDA 2017 |

Appeal from the Decree December 2, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):
CP-51-AP-0001100-2016
CP-51-DP-0000939-2014
FID: 51-FN-00902-2014

BEFORE:  BOWES, SOLANO, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 14, 2017**

M.C. ("Father") appeals from the decree involuntarily terminating his parental rights to his daughter A.A.A.F.M. ("A.A.M.") pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), and (b).  We are compelled to vacate and remand for further proceedings.

A.A.M. was born in 2009.  She lived with her mother, L.T.R. ("Mother"), and her two younger siblings, A.M. and B.L., until May 2015, when A.A.M. and her siblings were placed with a relative.  Mother has a history of substance abuse and mental health problems, and when the Philadelphia Department of Human Services ("DHS") became involved with

* Retired Senior Judge specially assigned to the Superior Court.

the family, A.A.M. and the younger siblings resided with Mother in squalor in a structurally unsound home that lacked utilities. On June 16, 2016, DHS filed a dependency petition, and the juvenile court subsequently adjudicated all three children dependent. The children currently reside together in kinship care with a maternal aunt, a pre-adoptive resource who noted her intention to permit post-adoption contact pursuant to Act 101, *i.e.*, 23 Pa.C.S. §§ 2731–2742 (permitting agreement for post-adoption communication or contact).

Meanwhile, on December 10, 2015, DHS identified Father, who was absent through most of juvenile court proceedings, as A.A.M.'s biological father. As it relates to the dispositive issue in this appeal, on the date that Father was identified, the juvenile court determined that Father resided on South 61st Street in Philadelphia, Pennsylvania. The trial court summarized Father's involvement as follows:

> On June 3, 2016, Father attended a permanency review hearing. Since that hearing date, Father failed to attend any future hearings. Father also failed to visit [A.A.M.] or attempt to engage [A.A.M.]. Father also failed to communicate with [Northeast Treatment Center (NET)], and DHS as to his whereabouts and availability. On November 8, 2016, a Parent Locater Service Report (PLS) was prepared and it was determined that Father could not be located.

Trial Court Opinion, 2/25/17, at 3.

On November 15, 2016, DHS filed a petition to terminate Father's parental rights. The petition listed Father's last known address and repeated

that address in the petition's concomitant statement of facts. Similarly, that address was listed on the trial court order appointing counsel. Nevertheless, DHS neglected to serve Father notice of the petition at that, or any other, address.

At the outset of the December 2, 2016 hearing on DHS's petition, Father's counsel objected to the lack of service.[1] DHS conceded that it failed to provide Father notice of the termination of parental rights proceedings, but justified the omission by referring to the unproductive PLS report. That is, DHS apparently reasoned that, since the PLS report did not reveal an address for Father, the agency was relieved from attempting to serve notice upon Father at any location, even the address listed in its records. During the ensuing discussion, David Coleman, the NET caseworker, explained that his agency had mailed correspondence to Father at the South 61st Street address and that Father failed to respond. Interpreting Mr. Coleman's statements as confirmation that the address was not accurate, the trial court concluded that DHS's PLS report constituted reasonable efforts to serve Father notice of the termination petition and the ensuing hearing. After the parties stipulated to Mr. Coleman's proposed factual testimony, the court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2),

---

[1] Having had no notice, Father did not attend the hearing.

and (b).[2]   Significantly, the trial court mailed notice of the decree

terminating Father's parental rights to Father's address of record, the precise

address that it permitted DHS to ignore.

Father raises the following issues for review:[3]

A. Whether the court erred in failing to find that Father was not properly served with the petition for involuntary termination and the petition to change the goal to adoption, when Father was not served, when Father was not served at any of his addresses, and when mother was served at all of her previous and current addresses.

B. Whether the court erred in terminating Father's parental rights and changing the goal to adoption, when Father was not served, when Father was not served at any of his addresses, and when mother was served at all of her previous and current addresses with the petition for involuntary termination and the petition to change the goal to adoption.

C. Whether the errors committed by the court below deprived appellant of his rights to due process and equal protection under the law.

Father's brief at 3.  Neither DHS nor A.A.M.'s *guardian ad litem* filed briefs in

this matter.

We review an order terminating parental rights for legal error or an

abuse of the trial court's discretion.  ***In re B.L.W.***, 843 A.2d 380, 383

---

[2] The trial court terminated Mother's parental rights to all three children, and it terminated the rights of the respective fathers of A.M. and B.L. as well.

[3] As the thirty-day appeal period expired on Sunday, January 1, 2017, Father had until the first regular business day after that to file his appeal. ***See*** 1 Pa.C.S. § 1908 ("Computation of time").   Accordingly, Father's January 3, 2017 appeal is timely.

(Pa.Super. 2004) (*en banc*). Instantly, Father argues that DHS failed to serve notice of the involuntary termination hearing pursuant to 23 Pa.C.S. § 2513(b), thereby violating his due process rights. For the following reasons, we agree.

DHS bears the burden of proving proper service by its affirmative act, which includes a good faith effort to provide notice to a parent, at his or her correct address, of a termination hearing. ***In re Interest of K.B.***, 763 A.2d 436, 439 (Pa.Super. 2000) (affirmative act); ***Appeal of J.T.M.***, 845 A.2d 861, 865 (Pa.Super. 2004) (good faith effort). This Court recently summarized constitutional due-process in the context of proceedings to terminate parental rights. We explained,

> "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." ***In re J.N.F.***, 887 A.2d 775, 781 (Pa.Super. 2005). "Due process is flexible and calls for such procedural protections as the situation demands." ***In re Adoption of Dale A., II***, 683 A.2d 297, 300 (Pa.Super. 1996) (quoting ***Sullivan v. Shaw***, 650 A.2d 882, 884 (Pa.Super. 1994)).
>
> It is well settled that termination of parental rights implicates a parent's Fourteenth Amendment right to due process. ***See In the Interest of A.P.***, 692 A.2d 240, 242 (Pa.Super. 1997) (stating that parents have a "fundamental liberty interest . . . in the care, custody, and management of their children") (citing ***Santosky v. Kramer***, 455 U.S. 745, 753 (1982)). An individual whose parental rights are to be terminated must be given due process of law, as the termination of parental rights is a constitutionally-protected action. ***See In re Interest of K.B.***, 763 A.2d 436, 439 (Pa.Super. 2000) (citing ***Santosky***, ***supra***).

*In re A.N.P.*, 155 A.3d 55, 66 (Pa.Super. 2017).

Section 2513(b) of the Adoption Act outlines a parent's statutorily-protected right to due process during termination proceedings. That provision provides:

> At least ten days' notice shall be given to the parent or parents, putative father, or parent of a minor parent whose rights are to be terminated, by personal service or by registered mail to his or their **last known address** or by such other means as the court may require. A copy of the notice shall be given in the same manner to the other parent, putative father or parent or guardian of a minor parent whose rights are to be terminated. A putative father shall include one who has filed a claim of paternity as provided in section 5103 (relating to acknowledgment and claim of paternity) prior to the institution of proceedings.

23 Pa.C.S. § 2513(b) (emphasis added). Thus, by its express terms, the Adoption Act required DHS to provide Father at least ten-days' notice by personal service or registered mail to his last known address, which the agency had in its records.

In addition to the foregoing statutory requirements, Pennsylvania Orphan's Court Rule 15.6(a) governs the manner that notice of the involuntary termination petition must be served.[4] Rule 15.6 provides as follows:

---

[4] Philadelphia County is unique among Pennsylvania's Courts of Common Pleas insofar as adoption proceedings in that jurisdiction are heard in family court, juvenile division, rather than in orphans' court. While the orphans' court rules typically do not govern family court proceedings, this Court has

*(Footnote Continued Next Page)*

- 6 -

(a) Notice to every person to be notified shall be by personal service, service at his or her residence on an adult or member of the household, or by registered or certified mail **to his or her last known address**. If such service is unobtainable and the registered mail is returned undelivered, then:

. . . .

(2) in proceedings under Rules 15.4 [(regarding the involuntary termination of parental rights]) . . . further notice by publication or otherwise shall be given if required by general rule or special order of the local Orphans' Court. If, after reasonable investigation, the identity of a person to be notified is unknown, notice to him or her shall not be required.

Pa.O.C. Rule 15.6(a) (emphasis added); **see** also Rule 15.4(d). Again, consistent with the Adoption Act, Rule 15.6(a) contemplates service to the parent's last known address and if service is unobtainable and the registered mail is returned undelivered, then the orphans' court may permit notice by publication. It is clear from both the Adoption Act and the governing procedural rules that some form of notice is mandatory unless the identity of a person is unknown. **See In re X.J.**, 105 A.3d 1, 7 n.8 (Pa.Super. 2014) ("The Adoption Act mandates that an individual whose parental rights may be terminated must be served with notice of an upcoming termination hearing. 23 Pa.C.S.A. § 2513(b).").

_(Footnote Continued)_ ———————

applied orphans' court rules to termination cases held in Philadelphia family court. **See In re A.N.P.**, 155 A.3d 55, 66-67 (Pa.Super. 2017) (applying, _inter alia_, Orphans' Court Rule 15.4 regarding notice and service of petition to terminate parental rights).

In the instant case, DHS explained that it declined to serve Father notice of the termination hearing because its PLS report was ineffective. N.T., 12/2/16, at 5. The agency proffered no explanation as to why it failed to attempt service at Father's last known address. However, relying upon Mr. Coleman's testimony that Father did not respond to correspondence that his agency, NET, mailed to the 61st Street address, the trial court found that DHS's PLS report constituted a reasonable effort to serve Father with notice of the petition. *Id*. at 8.

Our review of the certified record will not sustain the trial court's conclusion that DHS employed reasonable efforts when the agency failed to attempt service at Father's last known address as required by both the statutory and procedural framework. Instantly, Father's identity was known to DHS, and it possessed Father's last known address, as evidenced by its several references to that address in the petition to terminate parental rights. DHS ignored this information and relying solely upon the fruitless PLS report, relinquished its statutory obligation to protect Father's rights to due process. At a minimum, the agency was required to attempt service by certified mail before abandoning its efforts and failing to provide Father even notice by publication, as outlined in the rules.

Unlike DHS, the trial court, NET, and Father's court-appointed attorney mailed correspondence to Father at his last known address. Indeed, the trial court even mailed notice of the decree terminating Father's parental rights

to that location. While DHS also possessed this address, which appeared throughout its termination petition, it declined to serve Father with notice of the petition at that, or any other, location. Based on these facts, it is clear DHS failed to meet the minimum level of effort as required by both the Adoption Act and the governing rules of procedure. Thus, we find that the certified record does not support the trial court's determination that DHS fulfilled its duty to engage in reasonable efforts to effectuate service. *See In re Interest of K.B.*, *supra* at 439.

Moreover, we reject the trial court's inference that it would have been futile for DHS to attempt service at Father's last known address. First, this Court is not bound by the trial court's inferences. *In re M.G.*, 855 A.2d 68, 74 (Pa.Super. 2004). More importantly, the certified record does not support the implication that Father abandoned his South 61st Street residence. Mr. Coleman's discussion regarding his prior interactions with that address established nothing more than the reality that the correspondence NET mailed to Father at that location was delivered—otherwise, it would have been returned to NET as undeliverable. Where correspondence is returned undelivered, the record undoubtedly supports the inference that the address is not accurate. However, that scenario did not occur herein. Instantly, the mail addressed to Father was, in fact, delivered, and therefore, Father's failure to respond to NET's correspondence

is at least as likely to reflect, if not illustrate, Father's lack of interest in the termination proceedings rather than the inaccuracy of the address.

The dichotomy between these two potential explanations for Father's unresponsiveness illustrates why DHS's omission is so crucial in this case. Had DHS actually mailed notice to Father's last known address, as required by the statute, and Father still failed to attend the hearing, it would have established either that Father could not be located or that he received the notice and neglected to appear. Either of these results would have sustained the court's conclusion that DHS employed reasonable efforts. As it is, however, the record supports nothing more than the fact that DHS failed to fulfill the minimum quantum of effort mandated under § 2513(b) and Rule 15.6(a)(2).

Finally, considering the weight of the stipulated testimony adduced during the termination proceedings in favor of terminating Father's parental rights pursuant to 2511(a) and (b) and the potential delay to the now-eight-year-old child's adoption by her maternal aunt, we are understandably hesitant to vacate the trial court's decree terminating Father's parental rights. However, we observe that A.A.M. continues to thrive in kinship care along with her siblings, and we are confident that any delay associated with ensuring Father's due process rights would not be detrimental to her wellbeing in light of the maternal aunt's stated intent to continue to permit post-adoption contact with the family. Plainly, while judicial economy is a

noble pursuit, it does not outweigh the fundamental components of due process, *i.e.*, notice and the opportunity to be heard. Unlike the trial court, we are unwilling to ignore DHS's failure to serve, or attempt to serve, Father pursuant to § 2513(b) when Father's most recent address was known to the agency. Therefore, we vacate the December 2, 2016, decree terminating Father's parental rights and remand this case for a new proceeding that complies with § 2513(b).

Decree vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/14/2017